# In the
# United States Court of Appeals
## For the Seventh Circuit
_____

No. 03-3433

MEGAN LAWSON,

Plaintiff-Appellant,

v.

CURTIS HILL,

Defendant-Appellee.

_____

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 3:03-CV-261 AS—**Allen Sharp**, Judge.

_____

ARGUED FEBRUARY 19, 2004—DECIDED MAY 24, 2004

_____

Before CUDAHY, POSNER, and ROVNER, Circuit Judges.

POSNER, Circuit Judge. The district judge dismissed this
suit to enjoin, under 42 U.S.C. § 1983, the prosecution of the
plaintiff under Indiana's flag-desecration statute. The
statute provides that "a person who knowingly or intention-
ally mutilates, defaces, burns, or tramples any United States
flag, standard, or ensign commits flag desecration, a Class
A misdemeanor," Ind. Code § 35-45-1-4(a), for which the
maximum punishment is a year in prison and a $5,000 fine.
§ 35-50-3-2. The judge ruled that the plaintiff lacked stand-
ing under Article III and that anyway it would violate

comity to enjoin a public official on the ground on which the injunction was sought.

Megan Lawson was a 17-year-old high-school student in Goshen, a town in Elkhart County, when she filed this suit. Earlier the same year she had participated in several demonstrations against the war in Iraq and in one of them had displayed an American flag owned by her on which she had painted a peace symbol. Goshen's chief of police was present at that demonstration, called the altered flag "contraband," and said that it was illegal to paint a peace symbol on an American flag. But he didn't arrest or even threaten to arrest any of the demonstrators; instead, having declared his opinion, he withdrew from the distasteful scene. After a similar demonstration a member of the county board was reported in a local newspaper to have called for the arrest of the student demonstrators. But again none of them was arrested or threatened with arrest or otherwise harassed, denounced, etc.

Curtis Hill, the defendant, is the Prosecutor of Elkhart County, an elected office. At some point he learned about the demonstrations and told both the police chief of Goshen, and the county's sheriff, not to investigate whether the students had violated the flag-desecration statute. We do not know when anyone was last prosecuted under the statute. We know only that Hill has never prosecuted any-one under it and is unaware of any prosecutions in other counties.

Apparently Lawson was not concerned that the Goshen police might arrest her if she continued to desecrate the flag, for she didn't name the police chief, or the county commissioner who had urged the arrest of the student desecrators, as defendants. The only defendant is the county prosecutor. But far from having given any indication of wanting to enforce the flag-desecration statute against Lawson or other

students, Hill as we said had told the police not to investigate whether the students were violating the statute. The reason for his forbearance was that the U.S. Supreme Court has held that the First Amendment forbids punishing people who desecrate the American flag (although it does not forbid punishing the theft of an American flag by someone who means to burn or otherwise deface it or the burning of it in circumstances that would create a safety hazard) in order to make a political statement—which is an exact description of Lawson's actual and intended conduct. *United States v. Eichman*, 496 U.S. 310 (1990); *Texas v. Johnson*, 491 U.S. 397 (1989); *Spence v. Washington*, 418 U.S. 405 (1974) (per curiam). Of course it is possible that an elected prosecutor would institute a prosecution that violated the Constitution. He might be ignorant of the relevant constitutional law or, more likely, might see an opportunity to reap political gains from prosecuting people whose conduct though lawful had outraged the community. But Lawson had no reason when she filed her suit to suppose that Hill would do such a thing. And if he did, she would have an adequate remedy—to interpose the First Amendment as a defense to the prosecution.

Article III of the Constitution bars a federal court from enjoining threatened action that the plaintiff has no reason to suppose even remotely likely ever to materialize; there must be a real dispute in the sense that its resolution is likely to have tangible consequences for the plaintiff. *Poe v. Ullman*, 367 U.S. 497 (1961) (plurality); *Wisconsin Right to Life, Inc. v. Paradise*, 138 F.3d 1183, 1185-86 (7th Cir. 1998). When she sued, Lawson had no reason to think she had any dispute with Hill, much less one that might have tangible consequences for her. So far as appeared, they were in agreement, and her dispute if any was with nonparties, the police chief and the county board member.

Lawson argues that the mere existence of the flag-desecration statute establishes a threat of prosecution sufficiently great to allow her to sue. She cites language to support this argument from numerous cases, such as the following language from our decision, on which she relies heavily, in *Majors v. Abell*, 317 F.3d 719, 721 (7th Cir. 2003) (citations omitted): "A plaintiff who mounts a pre-enforcement challenge to a statute that he claims violates his freedom of speech need not show that the authorities have threatened to prosecute him; the threat is latent in the existence of the statute." But we added an important qualification in the next sentence: "Not if it clearly fails to cover his conduct." *Id.* This might be because his conduct was clearly outside the statute's scope. Or because the statute was clearly unconstitutional, either entirely so or as applied to the plaintiff's conduct. The meaning of a statute or other enactment resides not only in its words but also in the meaning impressed on those words by authoritative judicial decisions. Otherwise one might suppose that the First Amendment forbade only Congress to abridge freedom of speech, and allowed the President to do so freely; or that the Eleventh Amendment merely forbade a citizen of one state to sue another state in federal court, and left him free to sue his own state in federal court. Of course a person might have the misfortune to be prosecuted under a clearly unconstitutional statute; but by the same token he might be prosecuted under a statute the text of which clearly failed to cover his conduct. Neither risk would justify an injunction without some indication of a nontrivial probability of prosecution. *H.L. v. Matheson*, 450 U.S. 398, 405-07 (1981); *United Public Workers of America v. Mitchell*, 330 U.S. 75, 89-91 (1947); *Wisconsin Right to Life, Inc. v. Paradise*, *supra*, 138 F.3d at 1186-87; *SOB, Inc. v. County of Benton*, 317 F.3d 856, 865-66 (8th Cir. 2003); *Doe v. Duling*, 782 F.2d 1202, 1206-09 (4th Cir. 1986); compare *Navegar, Inc. v. United States*, 103 F.3d 994, 999-1001 (D.C. Cir. 1997).

The qualification "Not if it clearly fails to cover his conduct" was inapplicable in *Majors* itself. The statute in question—another Indiana statute, this one regulating political advertising—was ambiguous. It seemed on its face to cover the plaintiff's conduct, and although if so interpreted it might violate the First Amendment, this was not certain. We certified the question of interpretation to the Indiana Supreme Court, which ruled both that the statute covered the plaintiff's conduct and that, even so, it was constitutional. And we agreed. *Majors v. Abell*, 361 F.2d 349, 355 (7th Cir. 2004). So the plaintiff had in fact been in some danger of being prosecuted. Lawson, so far as appears, was not.

The statute books are littered with provisions that if read literally and without regard to their interpretive history would prohibit innocuous or even privileged conduct. See, e.g., William Michael Treanor & Gene B. Sperling, "Prospective Overruling and the Revival of 'Unconstitutional' Statutes," 93 *Colum. L. Rev.* 1902 (1993). Do state legislatures have a duty to conform their statute books to authoritative judicial interpretations? After *Johnson* and *Eichman*, should every state have been obliged, on pain of seeing its prosecutors enjoined, to rewrite its flag-desecration statute to create an express privilege for the conduct held privileged in those cases? There is no such obligation, see *EEOC v. Illinois*, 69 F.3d 167, 170 (7th Cir. 1995), yet a claim that there is is implicit in this lawsuit.

Lawson points us to Hill's deposition, in which he said he didn't think he had the authority to declare *any* Indiana statute unconstitutional, and when asked "can you say definitively that you would never prosecute anyone for violation of" the flag-desecration statute, replied that "it would be, in my estimation, inappropriate to speculate that we would prosecute anybody for any particular violation . . . without knowing what the circumstances of a particular

case would be." When asked in what circumstances he would prosecute someone under the flag-desecration statute, he repeated that he thought it would be inappropriate for him to speculate; "my job is to determine and evaluate, when particular facts arrive, whether or not there has been an appropriate violation of a criminal statute." He also said that "if facts came before me with regard to [the flag-desecration] statute, certainly the dictates of Texas vs. Johnson would be taken into consideration." That was one of the Supreme Court's flag-burning decisions.

Hill's statements, Lawson argues, did not add up to a clear disavowal of an intention to prosecute her. But such disavowals are important only in cases in which, without a disavowal, the plaintiff seeking to enjoin enforcement would have a reasonable basis for concern that he might be prosecuted. See *Hays v. City of Urbana*, 104 F.3d 102, 103-04 (7th Cir. 1997); *Presbytery of New Jersey of Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1468 (3d Cir. 1994). The disavowal might alleviate his concern, while refusal to disavow would be a signal that his concern was well founded. But without requiring well foundedness, officials will be overwhelmed with requests for legal advice. What if Lawson would like to chew bubble gum in school—can she demand that Hill disavow any intention of prosecuting her for such conduct and if he refuses seek to enjoin him from prosecuting her for public indecency? If he refused, she would not have standing to sue in federal court because there is no danger that Hill would prosecute her for public indecency for blowing bubbles; but neither is there any danger that he would prosecute her for painting a peace symbol on an American flag that she owns.

"[T]hat she owns . . ." is one clue to Hill's reluctance to offer the disavowal sought at his deposition. The Indiana statute is not unconstitutional in *all* its possible applications.

Lawson presumably can be prosecuted for violating the statute if she paints a peace symbol on her neighbor's flag without his consent, or, conceivably, if she tramples on it not to make a political statement but to keep her feet from getting wet. Cf. *Texas v. Johnson, supra*, 491 U.S. at 412-13 n. 8; *Spence v. Washington, supra*, 418 U.S. at 408-09. In other words, the applicability of the statute to flag desecration depends on the facts, so that the disavowal that Lawson seeks would require an advisory opinion on the lawful scope of the statute. There is no federal right to obtain advisory opinions from local prosecutors. In addition, as an elected official Hill is doubtless reluctant to express himself publicly in a manner that would suggest he condoned flag desecration. You can't bring a federal suit just to put an official on the spot.

Even if we are wrong to suppose the risk of prosecution too remote to confer standing to sue on Megan Lawson (to be clear, we don't doubt that we're right), the district judge was right not to enter an injunction. The cases continue to say that an injunction is an extraordinary remedy, that there is no right to an injunction as there is to damages if a wrong and an injury are proved, and that the decision whether to issue an injunction is a matter of discretion. E.g., *United States v. Oakland Cannabis Buyers' Cooperative*, 532 U.S. 483, 496-98 (2001); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-13 (1982); *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1203-04 (7th Cir. 1996); *United States v. Massachusetts Water Resources Authority*, 256 F.3d 36, 48 (1st Cir. 2001); 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2942, pp. 37-44 (2d ed. 1995). But there is a risk of misunderstanding if these familiar formulas are taken literally. As we explained in *Hoover v. Wagner*, 47 F.3d 845, 849-50 (7th Cir. 1995) (citations omitted), "There is no 'right' to an injunction, it is true, but only in the rather unhelpful sense that an injunction may be

issued only in a case or class of cases where damages are deemed an inadequate remedy. In this unhelpful sense, too, an injunction might be thought 'extraordinary' relief because damages are the ordinary relief. But it is not extraordinary in the sense of being discretionary. . . . The modern law of equity is a system of rules administered by regular judges rather than a compendium of moral principles administered by ecclesiastical officials, as the Lord Chancellors of England, who invented English equity jurisprudence, originally were. In specific classes of case, injunctions now issue pretty much as a matter of course."

Yet because injunctions place defendants under threat of prosecution for contempt of court and impose duties of continuing enforcement on courts and often burden innocent third parties, courts do retain the authority to deny an injunction even if a wrong is proved and a threatened harm shown. A particularly appealing case for withholding injunctive relief is, as we noted in *Hoover*, when an injunction is sought against the performance of public functions by the officials of another sovereign (or, in the case of the states of the United States, a quasi-sovereign). *Id.* at 850-51; see also *McKusick v. City of Melbourne*, 96 F.3d 478, 487-89 (11th Cir. 1996). In *Hoover* it was a state judge and city police that the plaintiffs wanted a federal court to enjoin. In this case the plaintiff wants the court to place an elected state prosecutor under an injunction so that if he should ever prosecute the plaintiff she can ask the court to hold him in contempt, thus turning the tables on the prosecutor and making him a criminal defendant.

The issuance of such an injunction would place humiliating and potentially paralyzing restrictions on law enforcement. Cf. *Younger v. Harris*, 401 U.S. 37, 43-45 (1971); *Hilton v. Guyot*, 159 U.S. 113, 163-64 (1895); *EEOC v. Illinois, supra*, 69 F.3d at 170. That is why federal courts refuse (it is not

because of the Anti-Injunction Act, 28 U.S.C. § 2283, which does not apply to suits under 42 U.S.C. § 1983, *Mitchum v. Foster*, 407 U.S. 225, 242-43 (1972)), other than in exceptional circumstances well illustrated by *Gilliam v. Foster*, 75 F.3d 881, 903-05 (4th Cir. 1996) (en banc), to enjoin an ongoing prosecution even when it is contended to violate the federal Constitution. *Younger v. Harris*, *supra*; see also *City of Los Angeles v. Lyons*, 461 U.S. 95, 112 (1983); *Palmer v. City of Chicago*, 755 F.2d 560, 573-74 (7th Cir. 1985). The present case is in one sense weaker, because Lawson is seeking to prevent Hill from doing something that he has no intention of doing. But in another sense it is stronger because the plaintiff has no actual interest in obtaining an injunction, since she is in no danger of being prosecuted under the statute whose enforcement she seeks to enjoin. Placing Hill under an injunction could be justified only on the basis of profound and, so far as appears, unwarranted distrust of the probity and professionalism of local prosecutors.

The suit was properly dismissed.

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*

USCA-02-C-0072—5-24-04