Margie J. PHELPS, et al., Petitioners,

v.

Red Oak Police Chief Drue POWERS, et al., Respondents,

State of Iowa, Intervenor.

No. 1:13–cv–00011.

United States District Court, S.D. Iowa, Central Division.

Signed Dec. 3, 2014.

Rita N. Bettis, Randall C. Wilson, ACLU of Iowa Foundation, Des Moines, IA, for Petitioners.

Robert M. Livingston, Kristopher K. Madsen, Stuart Tinley Law Firm LLP, Council Bluffs, IA, for Respondents.

Meghan L. Gavin, Jeffrey S. Thompson, Attorney General of Iowa, Des Moines, IA, for Intervenor.

---

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

ROBERT W. PRATT, District Judge.

Before the Court is a Motion for Summary Judgment, filed May 14, 2014, by Petitioners Margie J. Phelps ("Phelps"), Elizabeth M. Phelps, and Timothy B. Phelps (collectively "Petitioners"). *See* Clerk's No. 84. On May 14, 2014, Intervenor, the State of Iowa (the "State"), also filed a Motion for Summary Judgment in which Respondents Red Oak Police Chief Drue Powers ("Chief Powers") and Montgomery County Sheriff Joe Sampson ("Sheriff Sampson") join. *See* Clerk's Nos. 80, 81. On June 9, 2014, the State filed a resistance to Petitioners' Motion for Summary Judgment. Clerk's No. 91. On June 11, 2014, Petitioners filed a resistance to the State's Motion for Summary Judgment. *See* Clerk's No. 94. The Court held a hearing on the motions on November 17, 2014. Clerk's No. 108. The matters are fully submitted.

## I. FACTS

The facts of this case are contained largely in the affidavit of Margie Phelps, filed by Petitioners in support of their Motion for Summary Judgment. *See* Clerk's No. 84–2. At the November 17 hearing, the State acknowledged that it did not dispute the facts presented by Phelps's affidavit. Hr'g Tr. at 12.[1] Petitioners are all members of the Westboro Baptist Church. Clerk's No. 84–1 (Pets.' Statement of Material Facts) ¶ 1. Petitioners regularly engage in picketing and public demonstrations across the country, including in Iowa. *Id.* ¶ 2. During these demonstrations, Petitioners often mishandle the American flag by dragging it on the ground and wearing it on their bodies, among other actions. *Id.* ¶ 4.

Petitioners claim that law enforcement officials in Red Oak, Iowa threatened to enforce Iowa's flag desecration and misuse statutes against them, causing Petitioners to limit their desired expressive use of the flag. *Id.* ¶ 6; *see also* Iowa Code §§ 718A.1A, 723.4(6). Specifically, Petitioners claim that on July 24, 2010, Elizabeth Phelps was involved in a picketing event at the funeral of a soldier in Red Oak, Iowa. Clerk's No. 84–2 (Aff. of Margie Phelps) ¶¶ 10, 12. According to Petitioners, Chief Powers told Elizabeth Phelps that the flag desecration statutes would be enforced against the picketers. *Id.* ¶ 13. As a result of Chief Powers's

---

**1.** Citations to the Hearing Transcript are to the unedited Real Time version of the transcript provided to the Court by the court reporter.

statement, members of the church refrained from putting the flag on the ground or hanging it from their bodies. *Id.* At another Red Oak protest event attended by Phelps, Timothy Phelps, and other church members, Petitioners claim that Sheriff Sampson and other law enforcement officials told Phelps that she could not stand or spit on the flag. *Id.* ¶ 17.

At no time during the Red Oak protests were any of the Petitioners arrested or charged with any crime. *Id.* ¶ 18. Nonetheless, Petitioners claim that their First Amendment right to use the flag as part of their protests has been chilled by law enforcement action, and that they fear arrest or prosecution if they use the flag at future protests. Clerk's No. 84–1 ¶ 9.

## II. RELEVANT STATUTES

Petitioners challenge the constitutionality of three Iowa statutes. First, the "flag desecration statute" provides that:

> Any person who in any manner, for exhibition or display, shall place or cause to be placed, any word, figure, mark, picture, design, drawing, or any advertisement of any nature, upon any flag, standard, color, ensign, shield, or other insignia of the United States, or upon any flag, ensign, great seal, or other insignia of this state, or shall expose or cause to be exposed to public view, any such flag, standard, color, ensign, shield, or other insignia of the United States, or any such flag, ensign, great seal, or other insignia of this state, upon which shall have been printed, painted, or otherwise placed, or to which shall be attached, appended, affixed, or annexed, any word, figure, mark, picture, design, or drawing, or any advertisement of any nature, or who shall expose to public view, manufacture, sell, expose for sale, give away, or have in possession for sale, or to give away, or for use for any purpose any article or substance, being an article of merchandise or a receptacle of merchandise or article or thing for carrying or transporting merchandise, upon which shall have been printed, painted, attached or otherwise placed, a representation of any such flag, standard, color, ensign, shield, or other insignia of the United States, or any such flag, ensign, great seal, or other insignia of this state, to advertise, call attention to, decorate, mark, or distinguish the article or substance on which so placed, or who shall publicly mutilate, deface, defile or defy, trample upon, cast contempt upon, satirize, deride or burlesque, either by words or act, such flag, standard, color, ensign, shield, or other insignia of the United States, or flag, ensign, great seal, or other insignia of this state, or who shall, for any purpose, place such flag, standard, color, ensign, shield, or other insignia of the United States, or flag, ensign, great seal, or other insignia of this state, upon the ground or where the same may be trod upon, shall be deemed guilty of a simple misdemeanor.

Iowa Code § 718A.1A (hereinafter "flag desecration statute"). Second, Petitioners challenge the "flag misuse" statute, which provides that:

> A person commits a simple misdemeanor when the person does any of the following:
>
> . . .
>
> 6. Knowingly and publicly uses the flag of the United States in such a manner as to show disrespect for the flag as a symbol of the United States, with the intent or reasonable expectation that such use will provoke or encourage another to commit trespass or assault.

Iowa Code § 723.4(6) (hereinafter "flag misuse statute"). Third, Petitioners chal-

lenge the "enforcement" statute which provides that:

It shall be the duty of the sheriffs of the various counties, chiefs of police, and city marshals to enforce the provisions of this chapter, and for failure to do so they may be removed as by law provided. This chapter shall not be construed to apply to a newspaper, periodical, book, pamphlet, circular, certificate, diploma, warrant, or commission of appointment to office, ornamental picture, article of jewelry, or stationery for use in private correspondence, on any of which shall be printed, painted, or placed, said flag, disconnected from any advertisement. Nothing in this chapter shall be construed as rendering unlawful the use of any trademark or trade emblem actually adopted by any person, firm, corporation, or association prior to January 1, 1895.

Iowa Code § 718A.1A (hereinafter "enforcement statute").

## III. STANDARD FOR SUMMARY JUDGMENT

The term "summary judgment" is something of a misnomer.[2] *See* D. Brock Hornby, *Summary Judgment Without Illusions*, 13 Green Bag 2d 273 (Spring 2010). It "suggests a judicial process that is simple, abbreviated, and inexpensive," while in reality, the process is complicated, time-consuming, and expensive. *Id.* at 273, 281. The complexity of the process, however, reflects the "complexity of law and life." *Id.* at 281. "Since the constitutional right to jury trial is at stake," judges must engage in a "paper-intensive and often tedious" process to "assiduously avoid deciding disputed facts or inferences" in a quest to determine whether a record contains genuine factual disputes that necessitate a trial. *Id.* at 281–82. Despite the seeming inaptness of the name, and the desire for some in the plaintiffs' bar to be rid of it, the summary judgment process is well-accepted and appears "here to stay." *Id.* at 281. Indeed, "judges are duty-bound to resolve legal disputes, no matter how close the call." *Id.* at 287.

Federal Rule of Civil Procedure 56(b) provides that "[a] party against whom relief is sought may move at any time ... for summary judgment on all or part of the claim." "[S]ummary judgment is an extreme remedy, and one which is not to be granted unless the movant has established his right to a judgment with such clarity as to leave no room for controversy and that the other party is not entitled to recover under any discernible circumstances." *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 209 (8th Cir. 1976) (citing *Windsor v. Bethesda Gen. Hosp.*, 523 F.2d 891, 893 n. 5 (8th Cir. 1975)). The purpose of summary judgment is not "to cut litigants off from their right of trial by jury if they really have issues to try." *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 467, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962) (quoting *Sartor v. Ark. Natural Gas Corp.*, 321 U.S. 620, 627, 64 S.Ct. 724, 88 L.Ed. 967 (1944)). Rather, it is designed to avoid "useless, expensive and time-consuming trials where there is actually no genuine, factual issue remain-

---

**2.** Judge Hornby notes that over seventy years of Supreme Court jurisprudence gives no hint that the summary judgment process is unconstitutional under the Seventh Amendment. *Id.* at 281 (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 336, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) and *Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620, 627, 64 S.Ct. 724, 88 L.Ed. 967 (1944)). While he recognizes that not much can be done to reduce the complexity of the summary judgment process, he nonetheless makes a strong case for improvements in it, including, amongst other things, improved terminology and expectations and increased pre-summary judgment court involvement. *See id.* at 283–88.

ing to be tried." *Anderson v. Viking Pump Div., Houdaille Indus., Inc.*, 545 F.2d 1127, 1129 (8th Cir.1976) (citing *Lyons v. Bd. of Educ.*, 523 F.2d 340, 347 (8th Cir.1975)).

Federal Rule of Civil Procedure 56(c) mandates the entry of summary judgment upon motion after there has been adequate time for discovery. Summary judgment can be entered against a party if that party fails to make a showing sufficient to establish the existence of an element essential to its case, and on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is appropriately granted when the record, viewed in the light most favorable to the nonmoving party and giving that party the benefit of all reasonable inferences, shows that there is no genuine issue of material fact, and that the moving party is therefore entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir.1994). The Court does not weigh the evidence, nor does it make credibility determinations. The Court only determines whether there are any disputed issues and, if so, whether those issues are both genuine and material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Wilson v. Myers*, 823 F.2d 253, 256 (8th Cir.1987) ("Summary judgment is not designed to weed out dubious claims, but to eliminate those claims with no basis in material fact.") (citing *Weight Watchers of Quebec, Ltd. v. Weight Watchers Int'l, Inc.*, 398 F.Supp. 1047, 1055 (E.D.N.Y.1975)).

In a summary judgment motion, the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact based on the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any. *See Celotex*, 477 U.S. at 323, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. If the moving party has carried its burden, the nonmoving party must then go beyond its original pleadings and designate specific facts showing that there remains a genuine issue of material fact that needs to be resolved by a trial. *See* Fed.R.Civ.P. 56(e)(2). This additional showing can be by affidavits, depositions, answers to interrogatories, or the admissions on file. *Id.; Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 257, 106 S.Ct. 2505. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat a motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505. An issue is "genuine," if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party. *See id.* at 248, 106 S.Ct. 2505. "As to materiality, the substantive law will identify which facts are material.... Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

Particularly in the presence of competing cross motions for summary judgment, a court must keep in mind that summary judgment is not a paper trial. Therefore, a "district court's role in deciding the motion is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir.1994). In a motion for summary judgment, the Court's job is only to decide, based on the evidentiary record that accompanies the moving and resistance filings of the parties, whether there really is any material dispute of fact that still requires a trial. *See id.* (citing *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505

and 10 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2712 (3d ed.1998)).

■ Neither does filing cross motions for summary judgment mean the parties have waived their right to trial. *See Wermager v. Cormorant Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir.1983) ("[T]he filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits.") (citations omitted). Rather, for the purposes of summary judgment, a party concedes there are no factual issues and accepts the other party's allegations only for the purpose of their own motion. *See Federal Practice & Procedure* § 2720; *see also Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 561–62 (7th Cir.2002) (reviewing the record with "all inferences in favor of the party against whom the motion under consideration is made") (citing *Hendricks–Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir.1998)). "Cross motions simply require [a court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." *Barnes v. Fleet Nat'l Bank*, 370 F.3d 164, 170 (1st Cir.2004) (quoting *Wightman v. Springfield Terminal Ry.*, 100 F.3d 228, 230 (1st Cir.1996)). In this matter, then, each motion will be "evaluated independently to determine whether there exists a genuine dispute of material fact and whether the movant is entitled to judgment as a matter of law." *St. Luke's Methodist Hosp. v. Thompson*, 182 F.Supp.2d 765, 769 (N.D.Iowa 2001). Nevertheless, "[s]ummary judgments in favor of parties who have the burden of proof are rare, and rightly so." *Turner v. Ferguson*, 149 F.3d 821, 824 (8th Cir.1998).

## IV. LAW AND ANALYSIS

### A. *Background*

Petitioners, in a 42 U.S.C. § 1983 claim, challenge the facial constitutionality of Iowa Code §§ 718A.1A, 723.4(6), and 718A.6 under the First Amendment and Fourteenth Amendment, as well as the constitutionality of the statutes as applied to their own conduct. Previous versions of §§ 718A.1A and 723.4(6) were found to be unconstitutionally void for vagueness by this Court in *Roe v. Milligan*, 479 F.Supp.2d 995 (S.D.Iowa 2007). The laws were subsequently amended by the Iowa legislature; Petitioners now challenge the amended versions of the statutes. The State denies that the statutes are unconstitutional, and also challenges whether Petitioners have standing to bring this suit.

### B. *Standing*

■ "Standing, whether constitutional or prudential, is a jurisdictional issue which cannot be waived or conceded." *See Animal Legal Defense Fund, Inc. v. Espy*, 29 F.3d 720, 723 n. 2 (D.C.Cir.1994); *see also Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (stating that the question of standing "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise"). Both constitutional and prudential standing must be present, as both are necessary prerequisites to the exercise of jurisdiction. *See Starr v. Mandanici*, 152 F.3d 741, 750 (8th Cir.1998) (stating that the court "lacks jurisdiction" if judicially imposed prudential standing limitations are not satisfied). Here, the State challenges Petitioners' constitutional standing. At the motion hearing, the State argued that Phelps's affidavit was insufficient to support claims by Timothy Phelps and Elizabeth Phelps. However, the State conceded that only one Petitioner needed to establish standing in order for the lawsuit to proceed. Accordingly,

the Court dismisses Petitioners Timothy Phelps and Elizabeth Phelps and analyzes only whether Petitioner Margie Phelps has standing to file this lawsuit. *See* Hr'g Tr. at 6.

■ For this Court to properly exercise jurisdiction, Phelps must satisfy an "irreducible constitutional minimum" under Article III by showing the following:

> (1) an "injury in fact" that is both (a) concrete and particularized, and (b) actual or imminent, rather than conjectural or hypothetical; (2) a causal connection between the alleged injury and the defendant's conduct; that is, that the injury is "fairly traceable" to the challenged action; and (3) that it is likely that a favorable decision will redress the injury.

*Ben Oehrleins & Sons & Daughter, Inc. v. Hennepin Cnty.*, 115 F.3d 1372, 1378 (8th Cir.1997) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).

### 1. *Injury in fact.*

Phelps alleges that she was present at a picketing event in Red Oak on July 14, 2012, where members of the Westboro Baptist Church were using the American flag to protest by putting it on the ground to stand on it, hanging it off their bodies, and "air-spitting" on it. Clerk's No. 84–2 ¶¶ 14–15, 17. According to Phelps, law enforcement officers ordered protestors to remove the American flag from the ground and threatened to enforce the flag desecration statute after handing out copies of the law to protestors. *Id.* at ¶¶ 15–19.

The State argues that Phelps does not have an injury in fact that is both concrete and actual or imminent because Phelps admits that she has not actually been cited or arrested under any of the challenged statutes. *See* Clerk's No. 84–1 ¶ 3. More specifically, the State claims that Phelps's fears of arrest or prosecution are wholly speculative, despite the fact that there has been no "affirmative resurgence from the Respondents that Petitioners will not be arrested and prosecuted."[3] Clerk's No. 80–2 at 5. In support of its position, the State argues that the present matter is similar to *Lawson v. Hill*, 368 F.3d 955 (7th Cir.2004) and *Winsness v. Yocom*, 433 F.3d 727 (10th Cir.2006). In *Lawson*, the plaintiff carried an American flag with a peace symbol painted on it during a protest. 368 F.3d at 956. The chief of police declared the flag to be "contraband" and stated that it was illegal to paint a peace symbol on the flag. *Id.* The *Lawson* court concluded that the plaintiff did not have standing because no credible or realistic threat of prosecution existed after the county attorney told the police chief and county sheriff not to investigate. *Id.* at 960. Similarly, in *Winsness*, the court held that "assurances from prosecutors that they do not intend to bring charges are sufficient to defeat standing." 433 F.3d at 731 (quoting *D.L.S. v. Utah*, 374 F.3d 971, 975 (10th Cir.2004)).

■ The Court finds *Lawson* and *Winsness* unconvincing and concludes that Phelps has adequately stated an injury in fact for purposes of standing. In *International Association of Firefighters of St. Louis v. City of Ferguson*, the Eighth Circuit explained that "certainty of injury

---

**3.** The State further argues that Phelps is not subject to any real threat of arrest or prosecution because Iowa law enforcement officers are provided training in which they are told that the challenged statutes were found to be unconstitutional. *See* Hr'g Tr. at 11–12. The

Court does not find this argument compelling because the documents provided in support of the State's position reference the previous versions of the challenged statutes, which were amended following *Roe*. *See* 479 F.Supp.2d at 1014.

is not necessary [to show an injury in fact], at least in the First Amendment context." 283 F.3d 969, 975 (8th Cir.2002). The Court explained that one is not required to "undertake a prohibited activity, and risk the subsequent [consequences], in order to test the validity of the threatened application of [a law]." *Id.* Rather, a person can be "injured by having to give up, or hesitating to exercise, [their] First Amendment rights...." *Id.* at 973. Here, Phelps's fear of prosecution is objectively reasonable in light of Chief Powers's and Sheriff Sampson's specific statements that they would enforce the statutes against Phelps and her companions, and in light of the "history of enforcement of the desecration statutes in Iowa." Clerk's No. 84–2 ¶ 23; *Roe,* 479 F.Supp.2d at 995 (recounting the arrest and prosecution of individuals under prior versions of the statutes at issue); *see also 281 Care Comm. v. Arneson,* 638 F.3d 621, 627–28 (8th Cir.2011) (holding that an individual only needs to demonstrate an intent to engage in protected speech and a "credible threat of prosecution sufficient to support a claim of objectively reasonable chill" to establish an injury in fact for purposes of a First Amendment challenge to a state statute).

### 2. *Additional standing requirements.*

Finally, Petitioner has satisfied the remaining two elements to establish constitutional standing: that the injury is "fairly traceable" to the challenged action; and that it is likely that a favorable decision will redress the injury. *See Ben Oehrleins & Sons & Daughter, Inc.,* 115 F.3d at

1378. First, the threatened consequence of Phelps's expressive use of the flag is a criminal misdemeanor charge under the challenged statutes, including either physical arrest, prosecution, or both. *See* Iowa Code §§ 718A.1A, 723.4(6). Second, if the Court decides favorably on Phelps's claims, the State and its agents will be prevented from enforcing a criminal penalty on her. *See Lujan,* 504 U.S. at 561–62, 112 S.Ct. 2130 (establishing that standing depends considerably upon whether the plaintiff is himself an object of the government action at issue, such that if he is, there is ordinarily little question that the action has caused him injury, and that a judgment preventing the action will redress it). Therefore, the Court finds that Phelps has constitutional standing.[4]

### C. *Fourteenth Amendment: Void for Vagueness*

In support of her motion for summary judgment, Phelps argues that the flag desecration and misuse statutes are void for vagueness. Clerk's No. 84–3. The State counters that Phelps failed to adequately plead a void for vagueness challenge in her complaint and, thus, should be precluded from raising one at this stage of the proceedings. *See* Clerk's No. 91.

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The defendant must have "fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twom-*

---

4. Even if the Court were to assume that Phelps did not suffer an actual injury, she would nonetheless have constitutional standing. In a First Amendment facial overbreadth claim, "actual injury can exist for standing purposes even if the plaintiff has not engaged in the prohibited expression as long as the plaintiff is objectively reasonably chilled from exercising his First Amendment

right to free expression in order to avoid enforcement consequences." *Republican Party of Minn. v. Klobuchar,* 381 F.3d 785, 792 (8th Cir.2004). As discussed above, Phelps was never assured by the State that she would not face prosecution for mishandling the flag during demonstrations; thus, Phelps's right to free expression was objectively reasonably chilled.

*bly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal quotation omitted). In her Second Amended Complaint, Phelps only references the void for vagueness doctrine twice. First, in the "Other Facts & Specifications" section, Phelps states that "[o]n March 27, 2007, U.S. Chief District Judge, Robert Pratt issued a decision and opinion declaring the Iowa flag desecration and flag misuse statutes to be facially void for vagueness as a matter of constitutional law." Clerk's No. 30 at 6 (citing *Roe,* 479 F.Supp.2d at 1014). Second, in the "Claims Presented" section, Phelps claims that "Iowa Code Section 718A.6 is unconstitutional on its face because it requires enforcement of a statute that has been declared facially void for vagueness on constitutionally valid grounds." *Id.* at 10.

■ "The void-for-vagueness doctrine is embodied in the due process clauses of the fifth and fourteenth amendments"[;] a vague regulation "violates the first essential of due process of law by failing to provide adequate notice of prohibited conduct." *Stephenson v. Davenport Cmty. Sch. Dist.,* 110 F.3d 1303, 1308 (8th Cir. 1997). Nowhere in the Second Amended Complaint, however, does Petitioner claim that either § 718A.1A or § 723.4(6), as amended following *Roe,* are void for vagueness. Moreover, the Second Amended Complaint is devoid of any mention of due process under the Fifth and Fourteenth Amendments. Rather, Phelps asserts in the Second Amended Complaint that the challenged statutes infringe on her right to free speech and right to free exercise of religion under the First Amendment. *See* Clerk's No. 30 at 10.

Even under the "permissive" Federal pleading standard, the isolated statements in Phelps's Second Amended Complaint cannot reasonably be said to have put the State on notice that Phelps was asserting that the flag desecration and misuse statutes were void for vagueness. *See Northern States Power Co. v. Federal Transit Admin.,* 358 F.3d 1050, 1057 (8th Cir.2004) (concluding that parties could not argue claims at the summary judgment phase that were not adequately presented in the complaint). Accordingly, the Court will not consider Phelps's argument that the challenged statutes are void for vagueness.

### D. *First Amendment: Overbreadth*

■■ Phelps argues that the flag desecration and misuse statutes are facially unconstitutional under the First Amendment because they are overbroad. The First Amendment is applicable to the states through the Fourteenth Amendment. *Chaplinsky v. New Hampshire,* 315 U.S. 568, 570–71, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). It provides that "Congress shall make no law ... abridging the freedom of speech." U.S. Const. amend. I. "The hallmark of the protection of free speech is to allow 'free trade in ideas'— even ideas that the overwhelming majority of people might find distasteful or discomforting." *Virginia v. Black,* 538 U.S. 343, 358, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003) (internal citation omitted). In addition to speech, the First Amendment provides protection for symbolic or expressive conduct. *Id.* Conduct involving the American flag has long been recognized by the United States Supreme Court as expressive communication that falls within the protections of the First Amendment. *See, e.g., Texas v. Johnson,* 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989) (burning the flag); *Spence v. Washington,* 418 U.S. 405, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974) (attaching a peace sign to the flag). Here, Phelps mishandles the flag during protests and demonstrations in order to express the message that the flag has become an idolatrous symbol and "should not be worshiped as it is in this nation." Clerk's No. 84–2 at 4. Such use of the flag is plainly

expressive conduct that is protected by the First Amendment. *See Johnson*, 491 U.S. at 406, 109 S.Ct. 2533 (stating that conduct involving the American flag is " 'sufficiently imbued with elements of communication' to implicate the First Amendment.") (quoting *Spence*, 418 U.S. at 409, 94 S.Ct. 2727).

■ "A facial challenge will not succeed unless the statute is 'substantially' overbroad, which requires the court to find 'a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court.' " *N.Y. State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 11, 108 S.Ct. 2225, 101 L.Ed.2d 1 (1988) (quoting *City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 801, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984)). Thus, Phelps must show that the flag desecration and misuse statutes punish a " 'substantial' amount of protected free speech, 'judged in relation to the statute[s'] plainly legitimate sweep.' " *Virginia v. Hicks*, 539 U.S. 113, 118–19, 123 S.Ct. 2191, 156 L.Ed.2d 148 (2003) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 615, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973)). Such a showing "suffices to invalidate *all* enforcement of the law, 'until and unless limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression.' " *Id.* at 119, 123 S.Ct. 2191 (quoting *Broadrick*, 413 U.S. at 613, 93 S.Ct. 2908). This expansive remedy is provided out of concern that the threat of enforcement of an overbroad law "may deter or 'chill' constitutionally protected speech—especially when the overbroad statute imposes criminal sanctions." *Id.* That is:

> Many persons, rather than undertake the considerable burden (and sometimes risk) of vindicating their rights through case-by-case litigation, will choose simply to abstain from protected speech—

harming not only themselves but society as a whole, which is deprived of an uninhibited marketplace of ideas. Overbreadth adjudication, by suspending *all* enforcement of an overinclusive law, reduces these social costs caused by the withholding of protected speech.

*Id.* (internal citation omitted).

In *Roe*, this Court concluded that the previous versions of the flag desecration and misuse statutes were not unconstitutionally overbroad. 479 F.Supp.2d at 1007. Since then, the Eighth Circuit has come to the opposite conclusion with respect to a Missouri flag desecration statute that is very similar to the statutes at issue here. *See Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1158 (2014). In light of this recent precedent, and the amendments to the Iowa flag desecration and misuse statutes following *Roe*, this Court must reconsider its previous ruling.

The first step in analyzing an overbreadth challenge is to construe the challenged statute because "it is impossible to determine whether a statute reaches too far without first knowing what the statute covers." *United States v. Williams*, 553 U.S. 285, 293, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008). The second step is to determine whether the statute criminalizes a "substantial amount" of expressive activity in relation to its legitimate applications. *See id.* at 297, 128 S.Ct. 1830. If so, the Court must determine "whether the statute is 'readily susceptible' to a limiting construction which would render it constitutional." *Snider*, 752 F.3d at 1158 (quoting *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988)).

1. *Construe the statutes.*

a. *Iowa Code § 718A.1A, the flag desecration statute.*

Iowa Code § 718A.1A bans public display of a flag upon which has been affixed

"any word, figure mark, picture, design, or drawing, or any advertisement of any nature." In addition, a person "who shall publicly mutilate, deface, defile or defy, trample upon, cast contempt upon, satirize, deride or burlesque [the flag], either by words or act, or who shall, for any purpose place [the flag] upon the ground or where the same may be trod upon" is guilty of a simple misdemeanor under that section. *Id.* Similarly, the challenged statute in *Snider* stated that "[a]ny person who purposefully and publicly mutilates, defaces, defiles, tramples upon, or otherwise desecrates [the United States or Missouri flag] is guilty of the crime of flag desecration." 752 F.3d at 1157–58.

▮ In construing the challenged statute in *Snider*, the Eighth Circuit focused on the fact that the statute explicitly prohibited only "purposeful[ ] and public[ ]" flag desecration. *Snider*, 752 F.3d at 1158. The Court concluded that those "requirements ensure the unintended desecration of a flag or the private desecration of a flag will not be punished, and therefore, demonstrate that expressive conduct is the statute's target." *Id.* Here, § 718A.1A similarly prohibits public flag desecration, but lacks an explicit intent element. The State argues that the lack of an intent element sufficiently distinguishes the Iowa statute from the Missouri statute such that this Court is not bound by the decision in *Snider*. *See* Hr'g Tr. at 9. But, despite the absence of an intent element, the Court concludes that the Iowa statute is still focused to a significant degree on protected expressive conduct. Indeed, the statute's emphasis on public acts is particularly significant because "[p]ublic desecration of a flag is more likely to involve expressive conduct than a private desecration." *Snider*, 752 F.3d at 1158. Further, the acts prohibited—mutilation, defacing, defiling, trampling upon, etc.—

"unmistakably connote[ ] disrespectful treatment of the flag and suggest[ ] a focus on those acts likely to damage the flag's symbolic value." *United States v. Eichman*, 496 U.S. 310, 317, 110 S.Ct. 2404, 110 L.Ed.2d 287 (1990). Thus, § 718A.1A targets expressive conduct that is protected by the First Amendment.

b. *Iowa Code § 723.4(6), the flag misuse statute.*

▮ Iowa Code § 723.4(6) imposes a simple misdemeanor on any person who "knowingly and publicly uses the flag of the United States in such a manner as to show disrespect for the flag as a symbol of the United States, with the intent or reasonable expectation that such use will provoke or encourage another to commit trespass or assault." "Show disrespect" is defined as "deface, defile, mutilate, or trample." Iowa Code § 723.4(6)(b)(5). The State concedes that § 723.4(6) "is more closely related" to the Missouri statute in *Snider* because both contain an intent element. Hr'g Tr. at 11. However, § 723.4(6) differs from the Missouri statute in two significant ways. First, it prohibits knowing and public flag desecration done "in such a manner as to show disrespect for the flag as a symbol of the United States." Importantly, the Supreme Court has held that a government interest in safeguarding the flag "as the unique and unalloyed symbol of the Nation" is "related to the suppression of free expression" and, thus, cannot justify the imposition of criminal liability for public flag desecration. *Eichman*, 496 U.S. at 315–16, 110 S.Ct. 2404.

Second, § 723.4(6) differs from the Missouri statute because it arguably regulates only "fighting words," i.e., it only prohibits flag desecration intended to "provoke or encourage another to commit trespass or assault." The Supreme Court has identi-

fied narrow categories of expression that can be regulated consistent with the Constitution, including fighting words—"those personally abusive epithets which, when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provide violent reaction." *Black*, 538 U.S. at 359, 123 S.Ct. 1536 (internal quotation omitted). For example, a state may constitutionally ban "cross burnings done with the intent to intimidate." *Id.* at 363, 123 S.Ct. 1536. The government, however, may not regulate the use of fighting words "based on hostility—or favoritism—towards the underlying message expressed." *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 386, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992).

Phelps argues that § 723.4(6) is not subject to the "fighting words" exception because the acts prohibited by the law constitute viewpoint discrimination. Clerk's No. 84–3 at 22. As the Supreme Court explains in *R.A.V.*, "nonverbal expressive activity can be banned because of the action it entails, but not because of the ideas it expresses—so that burning a flag in violation of an ordinance against outdoor fires could be punishable, whereas burning a flag in violation of an ordinance against dishonoring the flag is not." 505 U.S. at 385, 112 S.Ct. 2538. By its plain language, § 723.4(6) is directed only at flag desecration done with the intent to show disrespect for the flag as our national symbol; thus it is aimed at proscribing only constitutionally protected expression. Although "desecration of the flag is deeply offensive to many," the "bedrock principle underlying the First Amendment ... is that the Government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable."

*Eichman*, 496 U.S. at 319, 110 S.Ct. 2404 (internal quotation omitted). Here, even assuming the legislature was attempting to regulate fighting words, § 723.4(6) does not pass constitutional muster because the statute only prohibits flag desecration that projects an "offensive political message." *R.A.V.*, 505 U.S. at 388, 112 S.Ct. 2538. Accordingly, the Court must conclude that § 723.4(6) targets protected expressive conduct.

### 2. *Criminalization of expressive conduct in relation to legitimate applications.*

Having concluded that both the flag desecration and misuse statutes criminalize protected conduct, the Court must next determine if the statutes criminalize a "substantial" amount of protected conduct in relation to their legitimate applications. *Snider*, 752 F.3d at 1158. This includes an analysis of whether there is "a realistic danger that the statute[s] [themselves] will significantly compromise recognized First Amendment protections of parties not before the Court." *N.Y. State Club Ass'n, Inc.*, 487 U.S. at 11, 108 S.Ct. 2225.

#### a. *Iowa Code § 718A.1A, the flag desecration statute.*

The State argues that non-expressive conduct involving the flag could constitutionally be prosecuted under the flag desecration statute. Hr'g Tr. at 10. By way of example, the State offers that a cold person wearing the flag for warmth could be prosecuted, but a person wearing the same flag for any "symbolic purpose related to expressing any ideas or beliefs" could not.[5] *Id.* The State cites *State v.*

---

**5.** *Snider* rejected a similar argument. There, Missouri offered the hypothetical of a "tired person dragging a flag through the mud, aware his actions would likely offend others, but not intending to communicate anything." *Snider*, 752 F.3d at 1158. The *Snider* court found that scenario "unlikely" and noted that it could point to no case where the Missouri

*Waterman,* where a teen was charged for wearing the flag as a poncho in public, and the conviction was upheld by the Iowa Supreme Court. 190 N.W.2d 809, 813 (Iowa 1971). Thus, the State is correct that non-expressive conduct—conduct where an individual was not intending to send any sort of political message through his or her actions—could constitutionally be prosecuted under § 718A.1A.

The focus of the analysis, however, is not on whether legitimate applications of the statute exist. Instead, the overbreadth analysis requires the Court to compare the scope of the legitimate applications to the amount of protected expressive conduct that is prohibited by the statute. *See Hicks,* 539 U.S. at 118–19, 123 S.Ct. 2191. While *Waterman* provides a lone example of the flag desecration statute's legitimate application, there are many more examples of the statute being enforced in Iowa against protected expressive conduct. *See State v. Farrell,* 223 N.W.2d 270 (Iowa 1974) (flag burning in public); *State v. Kool,* 212 N.W.2d 518 (Iowa 1973) (hanging peace sign over flag and hanging flag upside down); *Roe,* 479 F.Supp.2d at 995 (writing words on flag and hanging flag upside down). In addition, the State concedes that the legitimate applications of the flag desecration statute are "narrow." Hr'g Tr. at 10.

Here, unlike the plaintiffs in *Roe,* Phelps has sufficiently demonstrated that the flag desecration statute criminalizes a "substantial" amount of protected expressive conduct in relation to its legitimate sweep. *See* 479 F.Supp.2d at 1007 (concluding that the plaintiffs had not demonstrated that the flag desecration statute prohibited a substantial amount of protected conduct). Indeed, Phelps accurately points out that § 718A.1A contains "a daunting litany of proscriptions, all prohibiting expression

statute was enforced with respect to non-

and actions with expressive significance when done in exclusively expressive contexts." Clerk's No. 84–3 at 14.

b. *Iowa Code § 723.4(6), the flag misuse statute.*

Phelps argues that "[i]t is hard to honestly posit that there is any non-communicative reach to Iowa's flag misuse statute." Clerk's No. 94 at 21. The State does not address whether § 723.4(6) has legitimate applications, and the Court concludes that it does not. As discussed above, § 723.4(6) is only applicable to flag desecration aimed at showing disrespect for the flag as our national symbol. In other words, an individual must have the intent to engage in expressive conduct to violate the statute. *See Eichman,* 496 U.S. at 317, 110 S.Ct. 2404 ("[T]he Government's desire to preserve the flag as a symbol for certain national ideals is implicated 'only when a person's treatment of the flag communicates [a] message' to others that is inconsistent with those ideals.") (quoting *Johnson,* 491 U.S. at 410, 109 S.Ct. 2533). Individuals engaged in non-expressive conduct, such as the State's example of an individual wearing the flag for warmth, could not be subject to prosecution under § 723.4(6). Accordingly, there is no legitimate application of the statute.

c. *Parties not before the court.*

The Court must also consider whether there is a realistic danger that the statutes will compromise the First Amendment rights of parties not before the Court. *See N.Y. State Club Ass'n, Inc.,* 487 U.S. at 11, 108 S.Ct. 2225. *Snider* recognized that the Missouri statute "may have had a chilling effect on other expressive conduct." 752 F.3d at 1158. Similarly, Phelps argues that other members of the public may be

expressive conduct. *Id.*

affected by enforcement of the flag desecration and misuse statutes. *See* Clerk's No. 30 ¶ 10: Although this Court concluded in *Roe* that there was no realistic danger the challenged statutes would chill the First Amendment rights of the public because "[i]t is reasonable to believe that the average citizen generally understands that burning a flag as part of expressive speech or conduct is protected by the United States Constitution," the Court is compelled to follow the precedent set forth by the Eighth Circuit in *Snider. See Roe,* 479 F.Supp.2d at 1007; *see M.M. ex rel. L.R. v. Special Sch. Dist. No. 1,* 512 F.3d 455, 459 (8th Cir.2008) (concluding that a district court erred by declining to follow an Eighth Circuit opinion which is "controlling [for all the courts of the circuit] until overruled by our court en banc, by the Supreme Court, or by Congress."). Both § 718A.1A, the flag desecration statute, and § 723.4(6), the flag misuse statute, criminalize a broad range of protected expressive conduct involving the flag. The legitimate applications of § 718A.1A are "narrow," and § 723.4(6) has no legitimate application. Accordingly, the Court must conclude that both statutes are unconstitutionally overbroad.

3. *Limiting construction.*

The last step in the overbreadth analysis is to determine whether the statutes are "readily susceptible to a limiting construction which would render [them] constitutional." *Snider,* 752 F.3d at 1158 (internal quotation omitted). The State argues again that the statutes could be constitutionally applied to non-expressive conduct. But no Iowa court has interpreted the flag desecration or misuse statutes to include such a limitation. "Federal courts do not sit as a super state legislature, and may not impose their own narrowing construction if the state courts have not already done so." *United Food & Commercial Workers Int'l. Union, AFL–CIO, CLC v. IBP, Inc.,* 857 F.2d 422, 431 (8th Cir.1988). Like the statute in *Snider,* nothing on the face of the challenged statutes here "expressly exempts expressive conduct" from prosecution.[6] *Snider,* 752 F.3d at 1158. Therefore, this Court cannot construe the statutes in a way that would apply the threat of prosecution to only non-expressive, and therefore non-protected, conduct. The State also argues that the constitutionality of the statutes has been "consistently upheld by both state and federal courts." Clerk's No. 80–2 at 10. But the State cites *Waterman,* 190 N.W.2d 809, which upheld the facial constitutionality of the flag desecration statute many years before the Supreme Court's decisions in *Johnson,* 491 U.S. 397, 109 S.Ct. 2533, and *Eichman,* 496 U.S. 310, 110 S.Ct. 2404.

---

6. The Court notes that § 718A.1A contains a clause related to the commercial use of the flag which creates a simple misdemeanor for any person

who shall expose to public view, manufacture, sell, expose for sale, give away, or have in possession for sale, or to give away, or for use for any purpose any article or substance, being an article of merchandise or a receptacle of merchandise or article or thing for carrying or transporting merchandise, upon which shall have been printed, painted, attached or otherwise placed, a representation of any such flag, standard, color, ensign, shield, or other insignia of

the United States, or any such flag, ensign, great seal, or other insignia of this state, to advertise, call attention to, decorate, mark, or distinguish the article or substance on which so placed.

The parties have not made arguments related to that section of the statute, nor does the Court's ruling bear on the constitutionality of this provision. *See Eichman,* 496 U.S. at 315 n. 4, 110 S.Ct. 2404 ("We deal here with concededly political speech and have no occasion to pass on the validity of laws regulating commercial exploitation of the image of the ... flag.").

The Iowa Supreme Court has not reconsidered the issue since those landmark cases. Nor has the Iowa Supreme Court interpreted the amended versions of the statutes following *Roe*. Because this Court cannot impose a limiting construction on either the flag desecration or the flag misuse statute, they are facially overbroad and, therefore, unconstitutional under the First Amendment.[7]

### E. *First Amendment: Free Exercise of Religion*

Because the Court concludes that both § 718A.1A and § 723.4(6) are unconstitutionally overbroad regulations of protected expressive conduct under the First Amendment, it is not necessary to reach Phelps's argument that the statutes also unconstitutionally prohibit her free exercise of religion. The Court notes briefly, however, that it is not persuaded by Phelps's argument.

Phelps claims that her "religion commands abstention from treating the flag with any special deference," but that the flag desecration statute "requires [her] to evidence respectful treatment of the flag even in moments in which [she is not] attempting to engage in any expression." Clerk's No. 84–3 at 17. Phelps compares her claim to those in *Wooley v. Maynard*, 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977), and *West Virginia Board of Education v. Barnette*, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943). In *Wooley*, the Supreme Court held that a member of the Jehovah's Witnesses faith could not be required to display the state motto, "Live Free or Die," on his vehicle's license

plates. 430 U.S. at 717, 97 S.Ct. 1428. In *Barnette*, the Supreme Court held that a policy requiring public school students to regularly salute the flag was unconstitutional. 319 U.S. at 642, 63 S.Ct. 1178. The statutes at issue here are distinguishable because they prohibit, rather than mandate, conduct. The threat of punishment is not for failing to act in a certain manner towards the flag, but rather for actively handling the flag in one of the many ways proscribed by the statutes. Nothing in either challenged statute requires Phelps to affirmatively treat the flag with respect.

### F. *Injunctive Relief*

Finally, the Court addresses Phelps's request for injunctive relief to prevent Iowa law enforcement officers from enforcing the flag desecration and misuse statutes. The Court declines to grant such relief based on the assumption that the Iowa prosecutorial authorities will give full credence to this Court's holding that §§ 718A.1A and 723.4(6) are unconstitutionally overbroad. *See Roe v. Wade*, 410 U.S. 113, 166, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) (declining to address the issue of injunctive relief with the assumption that state prosecutorial authorities will give full credence to the Court's decision). For the same reason, it is unnecessary for the Court to address Phelps's argument that Iowa Code § 718A.6 is unconstitutional because it requires law enforcement to enforce the flag desecration statute.

### V. CONCLUSION

For the reasons discussed above, Petitioners' Motion for Summary Judgment is

---

**7.** The Court notes that Petitioner also prevails on her as-applied challenges to the statutes. As discussed above, Petitioner was engaged in expressive conduct involving the American flag. Petitioner limited that expressive conduct based on the reasonable belief that law enforcement would enforce the flag desecration or flag misuse statutes against her. Although Petitioner was not arrested, she was still injured in the sense that her First Amendment rights were chilled. For all the reasons stated in the Court's discussion of the facial challenge to the statute, Petitioner could not have been constitutionally prosecuted under either § 718A.1A or § 723.4(6).

**GRANTED.** The State's Motion for Summary Judgment is **GRANTED** as to the dismissal of Petitioners Timothy Phelps and Elizabeth Phelps, and **DENIED** in all other respects.

IT IS SO ORDERED.