**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**January 5, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

KRIS WINSNESS and KEN LARSEN,

Plaintiffs-Appellants,

v.

DAVID YOCOM, Salt Lake District
Attorney, JON HUNTSMAN, JR.,
Governor of the State of Utah,[*] MARK
SHURTLEFF, Attorney General of the
State of Utah, and ROGER
BLAYLOCK, Deputy Salt Lake
District Attorney,

Defendants-Appellees.

No. 04-4275

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(No. 2:04-CV-00788 PGC)**

---

Brian M. Barnard (James L. Harris, Jr. with him on the briefs), Utah Legal Clinic,
Salt Lake City Utah, for Plaintiffs-Appellants.

Joel A. Ferre, Assistant Attorney General (Mark L. Shurtleff, Attorney General,
with him on the brief), Salt Lake City, Utah, for Defendants-Appellees.

---

Before **McCONNELL**, **McKAY**, and **TYMKOVICH**, Circuit Judges.

---

[*] Pursuant to Fed. R. App. P. Rule 43(c)(2), Jon Huntsman, Jr. is
substituted for Olene S. Walker as Governor for the State of Utah.

**McCONNELL**, Circuit Judge.

There is no procedure in American law for courts or other agencies of government – other than the legislature itself – to purge from the statute books, laws that conflict with the Constitution as interpreted by the courts. For the most part, citizens are protected against enforcement of unconstitutional statutes by some combination of *stare decisis* (the principle that future cases will be decided in accordance with past precedent) and the deterrent effect of damages actions against executive officials who violate clearly established constitutional rights. It is generally not necessary (and in light of the case-or-controversy requirement of Article III, generally not permissible) for courts to issue redundant rulings on the constitutionality of indistinguishable statutes once the Supreme Court has spoken to an issue and law enforcement officials act accordingly. No one has standing to challenge a statute unless they have been or likely will be injured by it, and an unenforced statute generally does not cause injury – at least not the "concrete and particularized" form of injury that qualifies for purposes of Article III standing. *McConnell v. Fed. Election Comm'n*, 540 U.S. 93, 227 (2003).[1] Sometimes,

---

[1]A student commentator argues that the stigmatic effect of an unconstitutional law that remains on the books imposes an "expressive harm," but acknowledges that "standing doctrine renders challenges to the source of these harms nonjusticiable." Recent Case, D.L.S. v. Utah*, 374 F.3d 971 (10th Cir. 2004)*, 118 Harv. L. Rev. 1070, 1076 (2005).

however, litigants claim that the continued existence of a statute and the possibility of its enforcement – even after an authoritative judicial decision has established its unconstitutionality – has a chilling effect on their exercise of constitutional rights and should entitle them to sue.

In this case, two Utah residents sued to prevent enforcement of Utah Code Ann. § 76-9-601, the State's "flag-abuse statute." Similar to statutes found in the laws of most states, the Utah statute provides:

> (1) A person is guilty of abuse of a flag if he:
>
> > (a) Intentionally places any unauthorized inscription or other thing upon any flag of the United States or of any state of the United States; or
> >
> > (b) Knowingly exhibits any such flag, knowing the inscription or other thing to be unauthorized; or
> >
> > . . .
> >
> > (d) Knowingly casts contempt upon the flag of the United States or of any state of the United States by publicly mutilating, defacing, defiling, burning, or trampling upon it.

In *Texas v. Johnson*, 491 U.S. 397, 420 (1989), the Supreme Court held that a Texas flag desecration statute violated the First Amendment rights of a man who burned the American flag in the course of a political protest. In *United States v. Eichman*, 496 U.S. 310, 318–19 (1990), the Court extended its holding to political protestors who were prosecuted under a federal flag protection statute. In this

-3-

action, brought pursuant to 42 U.S.C. § 1983, Ken Larsen and Kris Winsness seek a declaratory judgment that the Utah flag-abuse statute violates the First Amendment, and an injunction against the Defendants prohibiting future enforcement. The district court dismissed the complaint as to both Plaintiffs for lack of standing. We AFFIRM.

I. FACTS AND PROCEDURAL HISTORY

Plaintiff-Appellant Ken Larsen is a resident of Salt Lake City, Utah. At the time that he filed his complaint, Mr. Larsen was a candidate for Governor of the State. During his campaign, Mr. Larsen wrote his name in ink on miniature United States and Utah flags, which he exhibited and distributed to the public. He was not cited, charged, or threatened with prosecution for these acts. His Complaint, however, alleges that he "is fearful that if he again writes his name on Utah flags or flags of the United States, that he will be criminally charged for violation" of the Utah flag-abuse statute. App. 11.

Plaintiff-Appellant Kris Winsness is a resident of Salt Lake County, Utah. On October 20, 2002, Mr. Winsness burned a symbol onto a United States flag and hung it on his garage. A neighbor called the police and reported that she saw Mr. Winsness "burn a smiley face into a flag." App. 62. A sheriff's deputy went to Mr. Winsness's house and asked him about the flag. Mr. Winsness told the officer that "he was bored so he burned the flag." *Id.* At the officer's request,

-4-

Mr. Winsness removed the flag. The officer cited him for flag abuse and confiscated the flag as evidence.

Based on the citation, and prior to any action by Salt Lake County prosecutors, Mr. Winsness appeared before the Salt Lake County Justice Court on December 23, 2002. An attorney was appointed for him, and his case was set for pretrial conference on March 4, 2003. At the pretrial conference, the court discovered that the citation listed the wrong police report number and reset the pretrial conference for April 29, 2003. At the April 29 pretrial conference, Defendant-Appellee Roger Blaylock, who serves as Deputy District Attorney for Salt Lake County, agreed with Mr. Winsness's attorney to set a June 13, 2003 hearing on a motion to dismiss that Mr. Winsness intended to file. The District Attorney's office did not receive the motion to dismiss until June 13, 2003, so the parties agreed to reset the hearing for August 15, 2003. On August 11, 2003, Mr. Blaylock filed a response to Mr. Winsness's motion to dismiss, arguing that no Utah court had ruled on the constitutionality of the flag-abuse statute, that Mr. Winsness was not making a political statement when he altered a flag, and that the flag-abuse statute was not unconstitutionally vague. Four days later, however, on August 15, 2003, Mr. Blaylock dismissed the state's case against Mr. Winsness. Although the statute of limitations has run, precluding the possibility of further criminal prosecution for this incident, the Complaint alleges that

criminal misdemeanor charges remain on Mr. Winsness's record.

Plaintiffs also claim that law enforcement officials in another county, who are not parties to this litigation, threatened to enforce the Utah flag-abuse statute against another person, Beth Fratkin, who likewise is not a party to this litigation. Ms. Fratkin apparently was not charged with any offense.

On August 26, 2004, Mr. Winsness and Mr. Larsen filed a complaint in the United States District Court for the District of Utah against Salt Lake County District Attorney David Yocom, Salt Lake County Deputy District Attorney Blaylock, Utah Attorney General Mark Shurtleff, and then-Governor Olene Walker.[2] Plaintiffs argue that Utah Code § 76-9-601 is facially unconstitutional because (1) it infringes on rights protected by the First Amendment of the United States Constitution and Article I, § 15 of the Utah Constitution, and (2) its failure to set guidelines for law enforcement renders it impermissibly vague in violation of the Fourteenth Amendment of the United States Constitution and Article I, § 7 of the Utah Constitution. Mr. Larsen alleges that "as part of his current and on going [sic] political campaign," he "desires to and intends to write his name in ink on small flags of the United States and/or Utah, to exhibit those flags and to

_____

[2]Mr. Larsen filed a similar complaint on April 29, 2004. The district court found that he lacked standing and dismissed the complaint without prejudice. *See* Order Granting Defendants' Motion to Dismiss 3, App. 170. The district court below held that this previous dismissal had no res judicata or collateral estoppel effect on the present case, and that ruling has not been challenged.

distribute those flags to members of the public." App. 10–11. Mr. Winsness alleges that he "plans to continue to publicly express his opinions and may do so in the future by altering an American flag or a Utah state flag." App. 12. Plaintiffs seek a declaration that the flag-abuse statute violates the aforementioned provisions of the United States and Utah constitutions, an injunction against future enforcement of the statute, and attorneys' fees and costs. Mr. Winsness originally sought damages against Defendants Yocom and Blaylock, but he has abandoned his claim for damages on appeal. *See* Aplt. Reply Br. 6 n.2 ("Plaintiffs do not seek monetary damages against Yocom or Blaylock.").

On September 14, 2004, the Defendants filed a motion to dismiss, arguing that the Plaintiffs lack standing to challenge the flag-abuse statute. Accompanying the motion to dismiss were two affidavits, from District Attorney Yocom and Assistant District Attorney Blaylock. In his affidavit, Mr. Yocom stated that "the enforceability of the Utah flag abuse statute is doubtful" in light of *Texas v. Johnson*. App. 52. He further stated that "[u]nless and until the constitutional doubts about the Utah statute are eliminated through a constitutional amendment or a new decision of the United States Supreme Court, I have no intention of prosecuting Ken Larsen or anyone else under the statute." *Id.* In his affidavit, Mr. Blaylock stated:

> The District Attorney's Office has never filed and has no intention of ever filing a criminal information against Mr. Winsness as a result of

-7-

his actions [on] October 20, 2002.  Unless the law changes, Mr. Winsness need have no fear of prosecution if he desecrates or alters a flag as a form of political expression.

. . . I would not have filed a criminal information where the purpose of the desecration was political expression.

App. 60.

The district court granted the Defendants' motion to dismiss, finding that neither plaintiff had suffered an injury-in-fact.  Although it found that Mr. Larsen and Mr. Winsness had arguably engaged in activities protected under the First Amendment and covered by the statute, the court held that the affidavits submitted by Mr. Yocom and Mr. Blaylock eliminated any credible threat of prosecution.  Mr. Blaylock's prior arguments in defense of the facial constitutionality of the statute[3] were deemed immaterial given the fact that his superior, District Attorney Yocom, provided direct assurance that no one would be prosecuted.  The court dismissed the Plaintiffs' argument that the enforcement of the statute against Mr. Winsness and Ms. Fratkin created a sufficient threat of prosecution to give them standing.  The court noted that Ms. Fratkin was not cited, and the city attorney assured her that she would not be charged with flag abuse.  As for Mr. Winsness, "the charges against him were dismissed well before

_____

[3]Although the state court briefs are not part of the record on appeal, Mr. Blaylock apparently contended that the Utah flag-abuse statute is constitutional as applied to non-expressive conduct.

the actual trial took place." Order Granting Defendants' Motion to Dismiss 8, App. 175. The court based its decision on the principle that "'assurances from prosecutors that they do not intend to bring charges are sufficient to defeat standing, even when the individual plaintiff had actually been charged or directly threatened with prosecution for the same conduct in the past.'" *Id.* (quoting *D.L.S. v. Utah*, 374 F.3d 971, 975 (10th Cir. 2004)).

## II. ANALYSIS

As the Supreme Court has recently noted, "[i]n every federal case, the party bringing the suit must establish standing to prosecute the action." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004). The case or controversy requirement of Article III limits federal jurisdiction to cases in which the plaintiff can demonstrate that "(1) he or she has suffered an injury in fact; (2) there is a causal connection between the injury and the conduct complained of; and (3) it is likely that the injury will be redressed by a favorable decision." *Phelps v. Hamilton*, 122 F.3d 1309, 1326 (10th Cir. 1997) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). The plaintiff's injury, moreover, must be "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation marks omitted).

The mere presence on the statute books of an unconstitutional statute, in the

-9-

absence of enforcement or credible threat of enforcement, does not entitle anyone to sue, even if they allege an inhibiting effect on constitutionally protected conduct prohibited by the statute. *D.L.S.*, 374 F.3d at 975. This does not necessarily mean that a statute must be enforced against the plaintiff before he can sue. *Ward v. Utah*, 321 F.3d 1263, 1267 (10th Cir. 2003). When he can show that he faces a "credible threat of prosecution," a plaintiff can sue for prospective relief against enforcement. *Id.* In other words, to satisfy Article III, the plaintiff's expressive activities must be inhibited by "an objectively justified fear of real consequences, which can be satisfied by showing a credible threat of prosecution or other consequences following from the statute's enforcement." *D.L.S.*, 374 F.3d at 975 (citing *Ward*, 321 F.3d at 1267). *See also Wilson v. Stocker*, 819 F.2d 943, 946 (10th Cir. 1987) (plaintiff has standing where he suffers "an ongoing injury resulting from the statute's chilling effect on his desire to exercise his First Amendment rights").

We review issues of standing de novo, "'accept[ing] as true all material allegations of the complaint, and . . . constru[ing] the complaint in favor of the complaining party.'" *Ward*, 321 F.3d at 1266 (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)). Because their circumstances are different, we will consider Mr. Larsen's and Mr. Winsness's standing separately.

-10-

A.  Mr. Larsen

We agree with the district court that Mr. Larsen cannot show an injury sufficient to give him standing.  Mr. Larsen openly engaged in conduct he believes was in violation of the Utah flag-abuse statute, and suffered no consequences.  He was not cited, prosecuted, or even threatened with citation or prosecution.  District Attorney David Yocom has filed an affidavit stating that "[u]nless and until the constitutional doubts about the Utah statute are eliminated through a constitutional amendment or a new decision of the United States Supreme Court, I have no intention of prosecuting Ken Larsen or anyone else under the statute." App. 52.  Mr. Larsen alleges that he suffers a concrete injury because he is "fearful" that if he violates the statute again he will be prosecuted, and that this has a chilling effect on his freedom of expression.  But this is insufficient to support standing unless there is a "credible threat of prosecution or other consequences following from the statute's enforcement." *D.L.S.*, 374 F.3d at 975 (citing *Ward*, 321 F.3d at 1267).

In *D.L.S.*, the plaintiff, an unmarried adult heterosexual who alleged that he had engaged in, and hoped and intended again to engage in, acts prohibited by Utah's sodomy statute, filed suit to challenge the constitutionality of that statute. *Id.* at 973.  He had never been prosecuted, though he identified one person who

-11-

had been arrested for the crime in the past, under different circumstances (conduct involving a minor). *Id.* at 974–75. One local prosecutor filed an affidavit that it was "doubtful" that the county would bring sodomy charges against the plaintiff for his past or future sexual activities as described in the complaint. *Id.* at 974. A second local prosecutor filed an affidavit stating that "he will not file charges against D.L.S. for the kind of sexual activity D.L.S. intends to practice." *Id.* This Court held that D.L.S. lacked standing to sue: "a plaintiff cannot show a real threat of prosecution in the face of assurances of non-prosecution from the government merely by pointing to a single past prosecution of a different person for different conduct." *Id.* at 975. Moreover, the Supreme Court in the meantime had decided *Lawrence v. Texas*, 539 U.S. 558 (2003), holding that a similar statute in another state was unconstitutional. "Prosecutors who swore that they would not, or were unlikely to, prosecute D.L.S. for private consensual activity before the issuance of *Lawrence*," this Court said, "are of course exceedingly unlikely to launch sodomy prosecutions after that decision." *D.L.S.*, 374 F.3d at 975.

The district court correctly held that the reasoning of *D.L.S.* "is wholly applicable here." Order Granting Defendants' Motion to Dismiss 8, App. 175. Like the plaintiff in *D.L.S.*, Mr. Larsen has not been prosecuted. On the contrary,

-12-

he has received assurances from the District Attorney that the flag-abuse statute will not be enforced against him or anyone else. Moreover, like the plaintiff in *D.L.S.*, Mr. Larsen's rights are protected by a recent Supreme Court decision holding unconstitutional a similar statute from another state. Under these circumstances, there is no credible threat that he will be prosecuted in the future, and he thus has no objectively reasonable basis for his assertion that the flag-abuse statute injures him by inhibiting his expressive conduct.

To be sure, the prosecutorial disavowals were provided only after Mr. Larsen filed his lawsuit. Mr. Larsen complains that prior to filing suit his attorney wrote District Attorney Yocom and Attorney General Shurtleff to request assurances of non-prosecution, and that Yocom and Shurtleff declined or failed to respond. That is of no moment. "There is no federal right to obtain advisory opinions from local prosecutors." *Lawson v. Hill*, 368 F.3d 955, 959 (7th Cir. 2004). The important fact is that Mr. Larsen never suffered any injury from the flag-abuse statute; the prosecutorial disavowals simply confirmed that fact. *See id.* ("[S]uch disavowals are important only in cases in which, without a disavowal, the plaintiff seeking to enjoin enforcement would have a reasonable basis for concern that he might be prosecuted.").

Mr. Larsen argues, in effect, that the possibility that he could be arrested or

-13-

prosecuted for flag abuse has not been reduced to zero. Mr. Yocom's political successors might repudiate Mr. Yocom's policy, or Mr. Larsen might be arrested elsewhere in the state, or police officers who have not been informed of Mr. Yocom's policy and have not been instructed not to enforce the statute might do so. In part, the answer to these arguments is that the relief Mr. Larsen seeks would not eliminate these risks. Prosecutors in other parts of the state would not be bound by injunctive relief against these defendants, and Mr. Larsen has not sought injunctive relief requiring that police officers be instructed not to enforce the statute. More fundamentally, however, it is not necessary for defendants in such cases to refute and eliminate all possible risk that the statute might be enforced. It is the plaintiff's burden to demonstrate an "actual or imminent, not conjectural or hypothetical" threat that the statute will be enforced against him, such that he suffers a constitutionally cognizable injury from the ensuing chilling effect on his conduct. *Lujan*, 504 U.S. at 560 (internal quotation marks omitted). That Mr. Larsen has not done.

Finally, Mr. Larsen appears to argue that we should dispense with the requirement that he suffer an injury-in-fact because he is bringing a facial challenge on First Amendment grounds under the "overbreadth" doctrine. Appellants' Br. 35-37. This is a misunderstanding. Overbreadth is an exception

-14-

to the *prudential* standing doctrine requiring plaintiffs to show that their own First Amendment rights (as opposed to the rights of third parties) have been violated, but it does not exempt plaintiffs – even plaintiffs bringing facial challenges on overbreadth grounds – from the bedrock Article III standing requirements of injury-in-fact, causation, and redressability. *D.L.S.*, 374 F.3d at 976; *Ward*, 321 F.3d at 1267; *Phelps*, 122 F.3d at 1326; *Am. Library Ass'n v. Barr*, 956 F.2d 1178, 1194 (D.C. Cir. 1992). A plaintiff who himself is not injured cannot sue to enjoin enforcement of a statute on the ground that it violates someone else's rights.

B.  Mr. Winsness

For different reasons, Mr. Winsness also lacks standing to pursue his constitutional challenge.  Accepting the allegations of the Complaint as true and construing them in favor of the Plaintiffs, Mr. Winsness has identified two kinds of injury resulting from two distinct sources.  First, he alleges that he was injured by county prosecutors because of the preliminary criminal proceedings he endured before the Salt Lake County Justice Court.  Second, he alleges that he suffers a continuing injury from the citation and his resulting criminal record.  Neither injury satisfies the requirements of Article III.

1.  *Alleged Injury Caused by Prosecutors*

Initially, we consider Mr. Winsness's allegations that he suffered concrete injury because of the actions of Salt Lake County prosecutors. Our precedents establish that a criminal prosecution, even one that is swiftly abandoned, can confer standing. *See Faustin v. City & County of Denver*, 268 F.3d 942, 948 (10th Cir. 2001); *F.E.R. v. Valdez*, 58 F.3d 1530, 1533 (10th Cir. 1995). In *Faustin*, the plaintiff was cited for violating a city posting ordinance by displaying an anti-abortion banner over an overpass. *Faustin*, 58 F.3d at 946. The charge was dismissed after the city prosecutor determined that displaying the banner did not violate the ordinance because it was not affixed to anything. *Id.* Later, the prosecutor sent a memorandum to the chief of police advising that Ms. Faustin's actions were protected by the First Amendment. *Id.* This Court held that Ms. Faustin had standing to seek nominal damages and retrospective declaratory relief "based on her prosecution." *Id.* at 948.

Like Ms. Faustin (and unlike Mr. Larsen), Mr. Winsness was briefly prosecuted as a result of his criminal citation. He was therefore put to the trouble of engaging a lawyer, appearing in court on several occasions, and filing a motion to dismiss. It is no answer to point out that the action against Mr. Winsness was dismissed before reaching trial. Even short-lived criminal prosecutions can cause concrete injuries. *Cf. Quermbeck v. Hanson*, 75 P.2d 1027, 1029–30 (Utah 1938)

-16-

(holding that damages for malicious prosecution, based on criminal charges dismissed immediately for lack of probable cause, can include "damages to reputation, good name, and for humiliation" as well as lost wages for discharge from employment). Ordinarily, wrongful criminal proceedings cause a judicially cognizable injury that, according to our precedents, may be redressed through nominal damages and retrospective declaratory relief.

Mr. Winsness, however, does not seek compensation for injuries sustained as a result of his criminal prosecution. He has abandoned any claim for money damages, including nominal damages. Aplt. Reply Br. 6 n.2. Although he has requested a declaration that the flag abuse statute "interferes with free expression as protected by the United States Constitution," App. 13, such a declaration would operate prospectively. We have noted that "a declaratory judgment is generally prospective relief," and that we treat declaratory relief as retrospective only "to the extent that it is intertwined with a claim for monetary damages that requires us to declare whether a past constitutional violation occurred." *PETA v. Rasmussen*, 298 F.3d 1198, 1202–03 n.2 (10th Cir. 2002) (construing *F.E.R.*, 58 F.3d at 1533). That was the case in *Faustin*, where the plaintiff lacked standing to seek prospective injunctive relief but could pursue declaratory relief in conjunction with her request for nominal damages. *See Faustin*, 268 F.3d at 948.

-17-

In contrast, Mr. Winsness makes no request for nominal damages, and the Complaint seeks equitable relief strictly to prevent future enforcement of the flag abuse statute. *See* App. 13 (requesting "Declaratory and Injunctive Relief to Enforce [the] United States Constitution"). Indeed, at oral argument, counsel for the Plaintiffs acknowledged that Mr. Winsness has brought a separate action against the deputy sheriff under § 1983 seeking money damages based on his citation and prosecution.

We are left, then, with Mr. Winsness's request for prospective injunctive and declaratory relief, and in this regard Mr. Winsness finds himself in the same position as Mr. Larsen: faced with no "credible threat" of future prosecution. Prosecutors immediately scuttled the only known prosecution under the statute, against Mr. Winsness, without filing a criminal information. The Supreme Court's decision in *Texas v. Johnson* makes repeat prosecutions even more unlikely. Most importantly, Mr. Winsness has received sworn assurances from county prosecutors that the flag abuse statute will not be enforced against anyone.

To be sure, one of the Defendants briefly pursued criminal proceedings against Mr. Winsness in the past. The Supreme Court has noted that "past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury." *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974). Yet the fact of past

-18-

injury does not confer standing to seek prospective injunctive relief without some credible threat of future injury. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 108 (1983) (finding that although the plaintiff had been subjected to an unconstitutional chokehold during an arrest, it was "no more than conjecture" that police would regularly use such chokeholds in the future, and "no more than speculation" that the plaintiff would again be arrested and subjected to one). In *Faustin*, the plaintiff had faced criminal charges for violating a city posting ordinance, and sought to enjoin enforcement of the ordinance in the future on First Amendment grounds. *Faustin*, 268 F.3d at 946. We held that no credible threat of future prosecution existed after the charges were dismissed "[i]n light of the city prosecutor's determination that Faustin was not violating the posting ordinance." *Faustin*, 268 F.3d at 948; *see also D.L.S.*, 374 F.3d at 975 ("[A]ssurances from prosecutors that they do not intend to bring charges are sufficient to defeat standing, even when the individual plaintiff had actually been charged or directly threatened with prosecution for the same conduct in the past.").

Similarly, in this case, Mr. Winsness's brief prosecution does not change the fact that he faces no credible threat of future prosecution. It is no more than speculation to predict that Mr. Winsness will again face criminal proceedings for

-19-

altering the flag. Unlike his co-plaintiff, Mr. Winsness has alleged neither an intent nor a desire to violate the flag-abuse statute in the future. According to the police report, he did so this time because he was "bored," and the Complaint states only that he "may" choose to alter another flag in the future. App. 12, 62. Even if he does, the Complaint itself suggests that prosecutions are unlikely because Mr. Larsen and Ms. Fratkin have publicly violated the flag abuse statute without facing criminal charges. Moreover, prosecutors promptly dismissed the citation against Mr. Winsness after concluding that he was engaged in protected speech. Under the reasoning of *Faustin*, Mr. Winsness lacks standing to seek prospective declaratory and injunctive relief.

Even if we assume that a credible threat of prosecution existed before this lawsuit was filed, the prosecutors' affidavits have rendered the controversy moot. For good reason, courts are reluctant to deem a controversy moot based merely on assurances from the defendants that they will not engage in unlawful activity again. *See United States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953) ("[V]oluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, [in part because] . . . . [t]he defendant is free to return to his old ways."). Accordingly, the defendant bears the "heavy," "stringent," and "formidable" burden of demonstrating that it is "absolutely clear

that the allegedly wrongful behavior could not reasonably be expected to recur."

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 170

(2000).[4]  The standard is difficult to satisfy, but not impossible.  *See Tandy v.*

*City of Wichita*, 380 F.3d 1277, 1291 (10th Cir. 2004) (finding portions of a

controversy moot because the City had submitted documents demonstrating that it

had changed its practices to comply with federal law and "[n]othing in the record

suggests that Wichita Transit intends to resume its discontinued policies").

In this case, Mr. Blaylock has foresworn any intention to bring criminal

charges against individuals who alter the flag for expressive purposes.  His

superior, Mr. Yocom, has gone further, categorically announcing that his office

will bring no prosecutions under the statute.  The veracity of these affidavits is

bolstered both by the prosecutors' actions, quickly repudiating the citation against

Mr. Winsness, and by *Texas v. Johnson*, which gives the prosecutors good reason

to avoid initiating potentially futile prosecutions.  The pleadings and affidavits

provide no evidence, and the Plaintiffs have provided nothing but speculation,

---

[4]Because mootness is jurisdictional and non-waivable, *Moongate Water Co. v. Dona Ana Mut. Domestic Water Consumers Ass'n*, 420 F.3d 1082, 1088 (10th Cir. 2005), we assume that the Supreme Court's discussion of the defendant's "burden" refers only to the ultimate burden of persuasion and not of coming forward with evidence or argument. Where the defendant has not argued mootness, the court has the obligation to examine the facts as alleged in the complaint and to determine whether there remains a live controversy.

that the prosecutors will change their policies if this lawsuit is dismissed. We therefore find it "absolutely clear" that the threat of prosecution has been eliminated. Nothing in our case law prevents government actors from responsibly retreating from an ill-advised prosecution, in response to controlling Supreme Court authority.

With no request for damages or retrospective declaratory relief, no credible threat of further prosecution, and in the face of authoritative disavowals of any intention to enforce the statute, Mr. Winsness has not alleged any judicially cognizable injury as a result of actions by the prosecutors.

### 2. Alleged Injury Caused by the Citation and Criminal Record

We next consider whether Mr. Winsness has standing based on allegations that he "was issued a citation" and "has been harmed because he now has a criminal record for an alleged violation of the Statute." App. 12, 13. Unlike the brief criminal prosecution discussed above, a permanent criminal record could cause a continuing injury to Mr. Winsness. We assume for purposes of this appeal that Mr. Winsness has alleged a concrete injury as a result of the citation and criminal record. *See Ambus v. Utah State Bd. of Educ.*, 800 P.2d 811, 813–14 (Utah 1990) (noting permissible uses of criminal records and emphasizing that, even in the absence of a criminal record, employers may "independently check[]

-22-

the background of employees" to uncover evidence of arrests or convictions).

The citation and criminal record do not, however, provide Mr. Winsness with standing to sue *these* defendants. Standing requires not only a judicially cognizable injury, but "a causal connection between the injury and the conduct complained of" and a likelihood "that the injury will be redressed by a favorable decision." *Phelps*, 122 F.3d at 1326. These defendants did not issue the citation to Mr. Winsness and are not responsible for maintaining any record of it.

We confronted a similar issue in *Nova Health Systems v. Gandy*, 416 F.3d 1149, 1153–54 (10th Cir. 2005), where an abortion provider sought to enjoin enforcement of an Oklahoma statute that imposed liability on abortion providers for any subsequent medical costs resulting from an abortion performed on a minor without parental consent or knowledge. The provider had alleged an adequate injury in fact because, as a result of the statute, it "faced an imminent likelihood that it would lose some minor patients seeking abortions." *Id.* at 1155. Yet the provider brought suit against public officials who oversaw state medical facilities, none of which had actually sought to recover damages under the statute. *Id.* at 1157. Noting that a plaintiff "must show that his or her injury is 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court,'" this Court found no causal

connection between the actions of the defendants and the injury alleged by the provider. *Id.* at 1156–57 (quoting *Lujan*, 504 U.S. at 560). Further, we found no substantial likelihood that declaratory or injunctive relief against the public officials would redress the provider's injury, as it would "enjoin[] *only these defendants* from filing suit to recover damages" under the statute. *Id.* at 1158–59 (emphasis in original).

Whatever injury Mr. Winsness has suffered as a result of the citation and criminal record, the Defendants in this case—the Governor, Attorney General, and Salt Lake County prosecutors—had nothing to do with it. The citation was issued by a sheriff's deputy without any prompting from the District Attorney's office. By operation of law, again without prosecutorial intervention, the citation became part of Mr. Winsness's criminal record. As in *Nova Health Systems*, no causal relationship exists between the actions of the Defendants and the alleged injury. Mr. Winsness therefore lacks standing to sue these defendants based on injuries resulting from the citation and criminal record.

### III.

Neither Mr. Larsen nor Mr. Winsness has demonstrated a live controversy concerning a concrete injury, caused by these defendants and redressable through

a favorable judgment. Accordingly, they cannot satisfy the Article III standing requirements. We therefore AFFIRM the judgment of the district court.