# IN THE SUPREME COURT OF TEXAS

No. 18-0932

Ex parte E.H.

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SECOND DISTRICT OF TEXAS

JUSTICE BLACKLOCK, dissenting.

E.H. pleaded guilty to felony online solicitation of a minor. Expunction of arrest records is only available to him if "there was no court-ordered community supervision under Chapter 42A for the offense." TEX. CODE CRIM. PROC. § 55.01(a)(2). The Court acknowledges what it calls the "historical reality": E.H. served community supervision for online solicitation, and a court ordered him to do it. Surely that's the end of it, one would think. After all, if (1) there was community supervision for the offense, and (2) a court ordered it, then ineluctably (3) there was court-ordered community supervision for the offense. And if there was court-ordered community supervision for the offense, E.H. is not entitled to expunction.

Despite acknowledging that E.H. served community supervision and that a court ordered it, the Court somehow concludes that "there was no court-ordered community supervision under Chapter 42A for the offense." According to the Court, in addition to the "historical reality" of E.H.'s community supervision and the court order imposing it, there is also a "legal reality," under which we must pretend a court did not order E.H. to serve community supervision because the

Court of Criminal Appeals decided the statute E.H. violated was unconstitutional.[1]  Until now, I would have thought the words "historical reality" redundant.  When it comes to the past, any reality that is not historical is simply not real.  There is only one "reality."  Events either happened or they didn't.  E.H.'s court-ordered community supervision happened.  That's the end of it, as far as the expunction statute is concerned.  The Court, however, asserts not just the familiar judicial power to "say what the law is." *Marbury v. Madison*, 5 U.S. 137, 177 (1803).  It now also asserts the unfamiliar, and to my mind unwelcome, power to say what the past was.

Perplexed by the Court's decision and unwilling to say something did not happen when everyone knows it really did, I respectfully dissent.

\* \* \*

As an initial matter, the Court reaffirms its prior holding that expunction is a matter of legislative grace, not a constitutional right. *Ante* at __ (citing *In re State Bar of Tex.*, 440 S.W.3d 621, 624 (Tex. 2014)).  Thus, there is never an automatic entitlement to expunction, even when the underlying criminal statute is deemed unconstitutional.  The Court does not contend that denial of expunction is an affirmative burden or punishment flowing from the crime.  If expunction were conceptualized this way, there would be an argument that denying expunction to E.H. improperly continues to punish him for violating an unconstitutional statute.  But neither the Court's prior cases nor its reasoning today approach expunction that way.  Instead, the Court correctly acknowledges that expunction is a purely statutory right available only to petitioners who meet the

---

[1] Normally, when lawyers and judges pretend things that aren't really so, we call them "legal fictions."  The expunction statute is quite plainly concerned not with lawyerly fictions but with the reality of E.H.'s case history.  Thus, the Court must conjure not a legal fiction but an alternate "legal" reality.

parameters chosen by the Legislature. Only if E.H. satisfies the legislative standards governing expunction is he entitled to expunction, irrespective of the constitutionality of the online-solicitation statute. On this, I agree with the Court.

My disagreement is with the Court's application of the expunction statute. As I read the legislative expunction rules, there is no difficulty applying them to this case. E.H. must show that "there was no court-ordered community supervision under Chapter 42A for the offense." TEX. CODE CRIM. PROC. § 55.01(a)(2). There plainly was, so E.H. cannot show there was not, and his expunction petition must be denied.

As the Court reads the statute, the matter is complicated by the need to determine whether the statute E.H. violated was constitutional. But there is no indication whatsoever in the text of chapter 55.01 that the Legislature made expunction available to petitioners who served community supervision under statutes later determined by courts to be unconstitutional. Given the statute's excruciating detail, one would expect to find a more explicit provision putting the constitutionality of the underlying statute on the table in cases like this one. Such a provision does not exist in this statute. The Court nevertheless manages to find it, lurking unspoken in the requirement that the petitioner show "there was no court-ordered community supervision under Chapter 42A for the offense." What should be a simple box-checking exercise regarding the petitioner's case history becomes an entrée to constitutional litigation.

The Court squeezes the elephant into the mousehole by focusing on the adjective "court-ordered." *See Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) ("Congress, we have held, does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes."). The Court correctly

3

observes that as the State reads the provision, it means the same thing with or without the adjective "court-ordered," because all community supervision under Chapter 42A is court-ordered. This superfluity of language must be avoided, the Court reasons. The adjective "court-ordered" before "community supervision" must add something to the statute's meaning. In a quest to give it meaning, the Court decides it is an oblique invitation to examine the constitutional validity of the court order, which the Court says depends on the constitutionality of the underlying criminal statute. This approach contorts the statute into something it comes nowhere close to saying. Helpful canons of statutory construction—such as the presumption against superfluous words—are not iron laws that require us to read meaning into a statute that just isn't there. *See Bridgestone/Firestone, Inc. v. Glyn-Jones*, 878 S.W.2d 132, 133 (Tex. 1994) ("The general rule is that when a statute is clear and unambiguous a court should not use rules of construction or extrinsic aids to construe it, but should give the statute its common meaning."). The presumption against superfluous words exists in service of the primary goal of statutory construction, which is to understand what the statutory words mean in plain English. As Justice Scalia aptly explained:

> Put to a choice, however, a court may well prefer ordinary meaning to an unusual meaning that will avoid surplusage. So like all other canons, this one must be applied with judgment and discretion, and with careful regard to context. It cannot always be dispositive because (as with most canons) the underlying proposition is not invariably true. Sometimes drafters do repeat themselves and do include words that add nothing of substance, either out of a flawed sense of style or to engage in the ill-conceived but lamentably common belt-and-suspenders approach.

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 176–77 (2012) (emphasis omitted).

Here, "community supervision" and "court-ordered community supervision" mean the exact same thing. Such linguistic redundancy is not uncommon and does not change the meaning

4

of a sentence. As in the phrases "gubernatorial pardon under Article IV, section 11" or "legislative statute" (or "African zebra in the wild"), the words "court-ordered community supervision under Chapter 42A" would mean the same thing if the adjective were removed. When the plain meaning of the words is the same with or without the adjective, forcing the words to mean something they do not say just to explain the adjective's presence improperly elevates interpretive formalism over plain English.

In demanding that the words "court-ordered" be given independent meaning, the Court sacrifices the overarching goal of statutory construction—understanding what the words mean—to the secondary concern of avoiding superfluous verbiage. But the Legislature does not speak in code. It does not bury big ideas like statutory constitutionality in words like "court-ordered" and then leave it up to us to employ the superfluous-language canon to divine its meaning. *See Whitman*, 531 U.S. at 468; *see also* Scalia & Garner, *supra*, at 69 ("Interpreters should not be required to divine arcane nuances or to discover hidden meanings."). Instead, we presume the Legislature says what it means and means what it says. *Cadena Comercial USA Corp. v. Tex. Alcoholic Bev. Comm'n*, 518 S.W.3d 318, 337 (Tex. 2017). Here, the Legislature said expunction is available only if "there was no court-ordered community supervision under Chapter 42A for the offense." All this language asks a court to do is to answer whether "there was." Here, there was, so E.H.'s petition should be denied.

In any event, even if the adjective "court-ordered" needed to have independent meaning, there is no reason to think it imports concerns about the community supervision's constitutional validity. Whether a court order was valid or constitutional has nothing to do with whether it was ordered by a court. All court orders are "court-ordered," both the valid and the invalid. There is

an important distinction, for many purposes, between *valid* court-ordered community supervision and *unconstitutional* court-ordered community supervision. But it's all "court-ordered community supervision." By referring generally to "court-ordered community supervision," the Legislature did not invoke a distinction between the valid kind and the invalid kind. Quite the opposite. By not distinguishing between valid and invalid court orders, the Legislature included *all* court-ordered community supervision.

Oddly, the Court's construction of the statute begins with the premise that all community supervision is court-ordered, and it ends with the conclusion that not all community supervision is court-ordered. Because all community supervision is court-ordered, the Court reasons, the statute's use of the term "court-ordered" must mean something unexpected, lest it be superfluous. So the Court assigns meaning to "court-ordered," and after applying that meaning, it concludes E.H.'s community supervision was not "court-ordered." Thus, a logical sequence beginning with the premise that all community supervision is court-ordered somehow ends with the conclusion that E.H.'s community supervision was not court-ordered. I agree the premise is correct, but it cannot lead to a conclusion that refutes the premise. Because all community supervision is ordered by a court, all community supervision is "court-ordered community supervision," whether it was constitutionally imposed or not.

\* \* \*

According to the Court, we cannot simply ask whether "there was no court-ordered community supervision for the offense." Never mind that is exactly what the statute says. No, we must also ask whether the statute E.H. violated was constitutional, even though the Legislature surely could have asked us to think about that if it wanted us to. As explained above, the

6

expunction statute itself provides no textual warrant to inquire into the constitutionality of the criminal law the petitioner violated. That alone should be reason enough not to do it.

A deeper flaw infects the Court's thinking, however. The Court reasons that because the statute was declared unconstitutional, it was "void ab initio." As the Court sees it, if the statute was "void ab initio," then (1) we must act as if any orders or judgments issued pursuant to the statute never existed (even though we know they did), and (2) there was no "offense" for which E.H. could have served community supervision (even though we know there was). Neither of these statements is correct.

First, the Court says that if the underlying criminal statute turns out to be unconstitutional, past orders and judgments issued pursuant to the statute are also "void ab initio." *Ante* at __. According to the Court, this means we must act as if these orders and judgments never happened. That is simply not right. The declaration of a statute's unconstitutionality curtails prospective enforcement of the statute. It does not automatically nullify all orders and judgments issued in the past pursuant to the statute. And it certainly does not require us to take the additional step the Court takes—to pretend that these orders and judgments never existed *at all*.

The Court cites several cases holding that unconstitutional statutes are "void ab initio." *See, e.g.*, *Reyes v. State*, 753 S.W.2d 382, 383 (Tex. Crim. App. 1998). It is one thing to say that when a statute is declared unconstitutional, we must now act as if it never existed. That is also not right, but leave it to one side for now. It is quite another thing altogether to say that when a statute is declared unconstitutional, a new "legal reality" arises under which all *orders* and *judgments* previously issued pursuant to the statute must be treated as if they *never happened*. This extreme view of what it means for a statute to be "void ab initio" is not mandated by any of the cases the

7

Court cites. Those cases call the *statute* "void ab initio," not the orders and judgments previously issued under it. But I take the Court to be saying much more. The Court says that the declaration of a statute's unconstitutionality renders orders and judgments previously issued pursuant to the statute not just void, but beyond our power even to acknowledge as events in the past. This is what the Court must be saying in order to conclude "there was no court-ordered community supervision" when in reality there was.

The implications are stunning. Imagine a world in which the Court is right—a world in which the judicial declaration of a statute's unconstitutionality means orders issued pursuant to that statute never existed. E.H. could sue his probation officer. Those imprisoned for violating the online-solicitation statute could sue their prison guards. The officers, of course, would point to the now-vacated court orders of community supervision or imprisonment, under which their actions were lawful at the time. Indeed, those court orders did not merely make the officers' actions lawful. The orders *compelled* the officers to act as they did. As the Court understands the status of the orders, however, the officers could not raise them as a defense to liability—just like the State cannot raise them as a defense to expunction. Under the new "legal reality," it is not just that the orders are no longer in effect. Their past existence cannot be acknowledged or allowed to have any current legal effect.

Obviously, that is not how it works. The officers in these hypothetical lawsuits could of course use the court orders under which they acted as a defense to liability, even if the underlying statute has been declared unconstitutional and the orders vacated. The orders were in place at a time in the past. They adjusted legal rights at that time. Even in proceedings today—after the statute has been declared unconstitutional and the orders vacated—the orders continue to have

8

potential legal effect because they tell us what the legal landscape looked like in the past. Similarly, the reality that there was court-ordered community supervision in E.H.'s case is not something we're obliged to pretend isn't true. Just as E.H.'s probation officer could use the vacated court order to refute a claim that "there was no legal warrant for the officer's actions," the State can use the order in an expunction proceeding to refute E.H.'s claim that "there was no court-ordered community supervision."

As support for the notion that judicial declarations of a statute's unconstitutionality eviscerate all past actions taken under the statute, the Court cites several cases in which convictions for online solicitation of a minor were vacated after *Ex parte Lo*. The very existence of such cases demonstrates a flaw in the Court's thinking. The declaration of the statute's unconstitutionality in *Ex parte Lo* did not exonerate anyone other than Mr. Lo. Similarly situated inmates were not released the next day. Had they been, their prison guards would have been in violation of orders requiring their imprisonment. Those orders did not vanish because the statute was declared unconstitutional. Each order had to be separately challenged and vacated, and the orders remained binding until vacated.[2] Even once vacated, these orders did not cease to have ever existed under a new "legal reality." Such orders cannot be enforced in the future, but they existed and were enforceable in the past. If a statute requires us to decide whether an order was in effect *in the*

---

[2] There is disagreement on the Court of Criminal Appeals as to whether the online-solicitation statute's violation of the First Amendment's overbreadth doctrine requires vacatur of all convictions under the statute, much less retroactive erasure from history of all orders and judgments issued pursuant to the statute. *See Ex parte Fournier*, 473 S.W.3d 789, 805 (Tex. Crim. App. 2015) (Yeary, J., joined by Keller, C.J., dissenting) ("Applicants today have made no showing that the statute that we struck down in *Lo* was unconstitutional as it applied to their conduct. Without such a showing, I am reluctant to extend to them the benefit of a retroactive application of *Ex parte Lo*."); *Ex parte Lester*, No. WR–88,227–01, 2018 WL 1736686, at *1 (Tex. Crim. App. Apr. 11, 2018) (Yeary, J., concurring) (disagreeing "with the Court's decision to grant relief on that basis [because] the applicant should first demonstrate that the statute was applied unconstitutionally in his case").

*past*—whether "there was" such an order—we must of course acknowledge that "there was" and that it affected legal rights in the past. Similarly, when the Legislature asks whether "there was no court-ordered community supervision under Chapter 42A for the offense," we must answer truthfully. No valid legal principle permits a court to do otherwise.

Next, the Court concludes that there cannot have been community supervision "for the offense" because "no 'offense' ever occurred." *Ante* at __. No offense occurred, the Court argues, because the statute E.H. violated has been judicially voided and must be treated as having never existed. This Court previously rejected that view:

> [N]either the Supreme Court in *Obergefell* nor the Fifth Circuit in *De Leon* "struck down" any Texas law. When a court declares a law unconstitutional, the law remains in place unless and until the body that enacted it repeals it, even though the government may no longer constitutionally enforce it.

*Pidgeon v. Turner*, 538 S.W.3d 73, 88 n.21 (Tex. 2017) (holding that Texas's traditional marriage laws may retain some legal effect despite *Obergefell v. Hodges*, 574 U.S. 1118 (2015)). Although lawyers and judges frequently speak of courts "striking down" or "nullifying" statutes, more careful consideration of the matter exposes the deficiency of this colloquial rhetoric of judicial supremacy. Courts are not legislatures. The Texas Constitution reserves the law-making and law-rescinding powers to the Legislature, and it prohibits the judiciary from "exercis[ing] any power properly attached to either of the other[] [branches]." Tex. Const. art. II, § 1. "The power of judicial review . . . permits a court to enjoin executive officials from taking steps to enforce a statute . . . . But the statute continues to exist, even after a court opines that it violates the Constitution . . . ." Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933, 936 (2018); *see also Winsness v. Yocom*, 433 F.3d 727, 728 (10th Cir. 2006) (McConnell, J.) ("There is no procedure in American law for courts or other agencies of government—other than the

legislature itself—to purge from the statute books, laws that conflict with the Constitution as interpreted by the courts.").[3]

E.H. pleaded guilty to the offense of online solicitation of a minor under the version of the statute then in existence. *Ex parte Lo* later rendered this offense unenforceable, and the Legislature responded by amending the statute. But to say E.H. did not serve his community supervision "for the offense" is to deny reality, replacing it with a manufactured "legal reality" without any warrant in the statute for doing so. The offense was on the books. E.H. was arrested and pleaded guilty to it. A court ordered him to serve community supervision "for the offense." That the offense was later declared unconstitutional does not mean E.H. didn't serve community supervision for it. If he didn't serve community supervision for the online-solicitation offense, what was he doing all that time? As with the term "court-ordered," the Court's attempt to make the words "for the offense" mean "for an offense that is not later determined to be unconstitutional" is like squeezing blood from a rock. That just isn't what the statute says. It says E.H. must show "there was no court-ordered community supervision under Chapter 42A for the offense." E.H. cannot make this

---

[3] Judicial declarations of a statute's unconstitutionality are not immutable. Judges can change their minds, and a court's membership can change. A statute declared unconstitutional today can be reconsidered tomorrow. Such reconsideration would be impossible, however, if the Court is right that the statute must be treated as having never existed once a court declares it unconstitutional. There is nothing left to reconsider if the statute is "void ab initio" for all purposes. But of course courts can and do reconsider their prior holdings. In fact, one member of the Court that decided *Ex parte Lo* regularly calls for its reconsideration. *E.g.*, *Ex parte Chavez*, 542 S.W.3d 583 (Tex. Crim. App. 2018) (Yeary, J., dissenting) ("Once again, the Court today grants post-conviction relief to an applicant whose conduct, as I see it, fails to even remotely constitute protected speech. . . . I believe that the Court should reconsider whether [*Ex parte Lo*] was decided correctly."). If this judge convinced four of his colleagues, *Ex parte Lo* would be overturned. What then? Would all the orders and judgments the Court says vanished when *Lo* was decided spring back into existence? Would convictions vacated because of *Lo* spring back to life? Or is it a one-way ratchet, such that all acts taken pursuant to the statute vanish when the statute is declared unconstitutional but do not reappear if the declaration is overturned? Presumably, the Court would agree that if *Ex parte Lo* were overturned, another petitioner in E.H.'s shoes would suddenly not be entitled to expunction. Thus, even though both served identical "court-ordered community supervision under Chapter 42A for the offense," E.H. would get expunction and the second petitioner would not. The expunction statute contains no basis for such a distinction.

showing, because he pleaded guilty to the offense of online solicitation of a minor and served community supervision for it. That the statute was declared unconstitutional has nothing to do with whether those events occurred. They did, so E.H. is not entitled to expunction.

Finally, if the Court were right that there is no "offense" in cases like E.H.'s, it is not clear what this would mean for chapter 55.01, which uses the word "offense" twenty-two times. If the unconstitutionality of a criminal statute means we must act as if there was never any "offense" to begin with, then the statute is reduced to rubble in such cases. It is difficult to imagine it could still be applied at all. Perhaps that is the true import of the Court's decision: Once the underlying statute is declared unconstitutional, all previously convicted persons are entitled to expunction. If none of them can be acknowledged to have ever been arrested for an "offense," then why would they not be automatically entitled to expunction? The mere existence of the paperwork in government files acknowledges the offense occurred, which is contrary to the Court's "legal reality" that "no offense ever occurred." The only way to match the real world with the new "legal reality" would be to expunge the records. The Court does not explicitly go that far, but I fail to see how its logic does not.

\* \* \*

Petitioners seek expunction in order to begin life anew, as if their legal trouble never happened. Where the Legislature has authorized it, expunction enables many people to do that. As I understand the statute, the Legislature has not entitled E.H. to expunction because he pleaded guilty and served community supervision for the offense.

One irony of today's decision is that, in order to conclude that E.H. is entitled to expunction, the Court must act as if E.H. never committed an offense and never served community

12

supervision. In other words, E.H. gets expunction because the Court believes it cannot acknowledge the existence of the very things he wants expunged. That is not how the statute works. E.H. must prove he qualifies for expunction *before* he becomes entitled to be treated as if his offense never happened.

More importantly, the Court's decision misunderstands what it means to declare a statute unconstitutional. This mistake could have serious consequences beyond the narrow context of expunction. I respectfully dissent.

_____
James D. Blacklock
Justice

**OPINION DELIVERED:** May 15, 2020