# Supreme Court of Texas

---

No. 21-0978

---

The Lilith Fund for Reproductive Equity,

*Petitioner,*

v.

Mark Lee Dickson and Right to Life East Texas,

*Respondents*

---

On Petition for Review from the
Court of Appeals for the Seventh District of Texas

---

*~ consolidated for oral argument with ~*

---

No. 21-1039

---

Mark Lee Dickson and Right to Life East Texas,

*Petitioners,*

v.

The Afiya Center and Texas Equal Access Fund,

*Respondents*

---

On Petition for Review from the
Court of Appeals for the Fifth District of Texas

---

JUSTICE DEVINE, joined by Justice Blacklock, concurring.

Throughout the history of this great State, its people—through their elected representatives—have enacted laws that both support the State's vital and legitimate "interest in protecting fetal life" and regard the fetus as having "the most basic human right—to live[.]"[1]  In 1854, within the first decade after joining the Union, Texas criminalized abortion.[2]  Since then, the Legislature has continuously kept laws protecting fetal life in the law books, including criminal prohibitions on both procuring and furnishing the means of procuring an abortion.[3]

In 1973, however, the Supreme Court of the United States deemed the abortion laws in the Texas Penal Code unconstitutional "as a unit" in *Roe v. Wade*.[4]  Shortly after *Roe*, the Legislature moved the abortion laws from the Texas Penal Code to the Texas Revised Civil

---

[1] *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2261 (2022); *see History of Abortion Laws*, TEX. STATE LAW LIBRARY, https://guides.sll.texas.gov/abortion-laws/history-of-abortion-laws#s-lg-box-wrapper-34134160 (last visited Feb. 21, 2023) (providing a timeline of Texas abortion laws).

[2] *See* Act effective May 1, 1854, 5th Leg., R.S., ch. 49, § 1, 1854 Tex. Gen. Laws 1502, 1502.

[3] *See* TEX. REV. CIV. STAT. arts. 4512.1–.6; TEX. PENAL CODE arts. 1191–1196 (1925); TEX. PENAL CODE arts. 641–646 (1895); TEX. PENAL CODE arts. 1071–1076 (1907); TEX. PENAL CODE arts. 536–541 (1879); TEX. PENAL CODE arts. 531–536 (1856).

[4] 410 U.S. 113, 117, 166 (1973) ("The Texas statutes that concern us here are Arts. 1191-1194 and 1196 of the State's Penal Code . . . . Our conclusion that Art. 1196 is unconstitutional means, of course, that the Texas abortion statutes, as a unit, must fall. . . . [T]he present criminal abortion statutes of [Texas] are unconstitutional."), *overruled by Dobbs*, 142 S. Ct. at 2242.

Statutes,[5] expressly noting that "[t]he purpose of this section is to provide for transfer of articles . . . which are not repealed by this Act to the civil statutes . . . without reenactment and without altering the meaning or effect of the unrepealed articles[.]"[6] And less than two years ago, the Legislature issued a finding that "the State of Texas never repealed, either expressly or by implication, the state statutes enacted before the ruling in *Roe*[] that prohibit and criminalize abortion[.]"[7]

*Roe* was wrong—indeed, "egregiously wrong"—and "deeply damaging" from the day it was decided.[8] Since that time, it has been "on a collision course with the Constitution."[9] At long last, the Supreme Court of the United States, in *Dobbs v. Jackson Women's Health Organization*, has finally overruled *Roe*, returning "the authority to regulate abortion . . . to the people and their elected representatives."[10]

Correctly recognizing *Roe*'s illegitimacy—although *Roe* had not yet been overruled at that time—Mark Lee Dickson and Right to Life East Texas (RLET) publicly described The Afiya Center, Texas Equal Access Fund, and The Lilith Fund for Reproductive Equity (collectively, the Funds) as "criminal organizations" for funding abortions. When the Funds sued for defamation, Dickson and RLET moved to dismiss the

---

[5] *See* TEX. REV. CIV. STAT. arts. 4512.1–.6.

[6] *See* Act of May 24, 1973, 63d Leg., R.S., ch. 399, § 5(a), 1973 Tex. Gen. Laws 883, 995, 996e (eff. Jan. 1, 1974).

[7] Act of May 6, 2021, 87th Leg., R.S., ch. 62, § 2, 2021 Tex. Sess. Laws 125, 125.

[8] *Dobbs*, 142 S. Ct. at 2265.

[9] *Id.*

[10] *Id.* at 2279.

3

Funds' lawsuits under the Texas Citizens Participation Act (TCPA),[11] asserting that the alleged defamatory statements were true as a matter of law, among other arguments.[12] Specifically, Dickson and RLET argued that because the statutory provision criminalizing the funding of abortion remained on the books in Texas,[13] it is indisputably true that the Funds are criminal organizations under Texas law, even if *Roe*'s erroneous holding prevented enforcement of the law when the challenged statements were made.

Although the Funds' conduct *would* have been considered criminal under Texas law but for "*Roe*'s abuse of judicial authority,"[14] we need not decide whether it is *actually* true that such conduct was criminal before the Supreme Court overruled *Roe*. As the Court holds, a reasonable person would perceive Dickson and RLET's statements as opinions—indeed, advocacy—about what the law is and should be, not as verifiable facts.[15]

I join in full the Court's well-reasoned and thorough opinion. But it is regrettable that it took the courts of our State so long to dismiss the

---

[11] *See* TEX. CIV. PRAC. & REM. CODE §§ 27.001–.011.

[12] *See id.* § 27.005(d) ("[T]he court shall dismiss a legal action against the moving party if the moving party establishes an affirmative defense or other grounds on which the moving party is entitled to judgment as a matter of law."); *D Mag. Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 441 (Tex. 2017) ("[T]ruth is generally a defense to defamation[.]").

[13] *See* TEX. REV. CIV. STAT. art. 4512.2 ("Whoever furnishes the means for procuring an abortion knowing the purpose intended is guilty as an accomplice.").

[14] *Dobbs*, 142 S. Ct. at 2243.

[15] *Ante* at 3, 23-24, 27.

4

Funds' obviously meritless lawsuits that were filed to silence their political adversaries. Defamation law must never become a weapon of intimidation against opponents, no matter the party or the side of a political issue. The TCPA exists to dispose of lawsuits designed to intimidate and silence those who exercise their constitutional right to speak freely.[16] To "deter the party who brought the legal action from bringing similar actions," the TCPA provides for both sanctions and judicial "findings regarding whether the legal action was brought to deter or prevent the moving party from exercising constitutional rights and is brought for an improper purpose, including to harass . . . ."[17] Although the TCPA does not authorize an appellate court to impose these sanctions in the first instance, the district courts on remand, if called upon, will bear the responsibility to use the TCPA remedies to deter these plaintiffs and any others, regardless of viewpoint, who would misuse litigation to intimidate their political opponents.

I also write separately to emphasize that although *Roe* egregiously declared the Texas abortion laws "as a unit" unconstitutional, it did not—and could not—remove those prohibitions from the Texas law books. And because *Roe* has been overruled, these laws are now enforceable. As this Court has explained, "We do not deny that laws declared unconstitutional by a court remain in the books until

---

[16] *See* TEX. CIV. PRAC. & REM. CODE § 27.002 ("The purpose of this chapter is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury.").

[17] *See id.* §§ 27.007(a), .009(a)(2).

5

repealed by the legislature.  Indeed, written laws do not simply vanish from existence once declared unconstitutional."[18]  The power to revoke, repeal, erase, expunge, or excise a statute from the law books lies only with our Legislature, which is composed of the people's duly elected representatives.[19]  "There is no procedure in American law for courts or other agencies of government—other than the legislature itself—to purge from the statute books, laws that conflict with the Constitution as interpreted by the courts."[20]  Although a court's declaration that a law is unconstitutional may circumscribe the legal effect of that law,[21] it

---

[18] *Ex parte E.H.*, 602 S.W.3d 486, 494 n.10 (Tex. 2020).

[19] *See* TEX. CONST. art. II, § 1 ("The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: those which are Legislative to one, those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted."), art. III, § 1 ("The Legislative power of this State shall be vested in a Senate and House of representatives[.]"); *Graphic Packaging Corp. v. Hegar*, 538 S.W.3d 89, 104 (Tex. 2017) ("The power to enact our state laws together with the power to amend or repeal existing state law is vested in the Texas Legislature."); *see also* TEX. CONST. art. I, § 28 ("No power of suspending laws in this State shall be exercised except by the Legislature."); *Terrazas v. Ramirez*, 829 S.W.2d 712, 723 (Tex. 1991) ("Without a determination that Senate Bill 31 is invalid, the district court was prohibited from suspending its effect by article I, section 28 of the Texas Constitution[.]").

[20] *Winsness v. Yocom*, 433 F.3d 727, 728 (10th Cir. 2006); *see Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2220 (2020) (Thomas, J., concurring) ("The Federal Judiciary does not have the power to excise, erase, alter, or otherwise strike down a statute.").

[21] *See In re Lester*, 602 S.W.3d 469, 471-73 (Tex. 2020); *see also id.* at 483-84 (Blacklock, J., dissenting) (noting that although "a statute continues to exist and to have potential legal consequences after a court declares it unconstitutional," there are many ways a defendant could use the prior

does not usurp the Legislature's exclusive province to determine what is included in or removed from the statutory law books.[22]

Because the Supreme Court of the United States has finally overruled *Roe* and recognized that a state may protect fetal life by prohibiting abortion, *Roe*'s declaration that Texas's criminal abortion laws are unconstitutional no longer carries any proscriptive force. Sadly, for institutions that have adhered to this flawed declaration, *Roe* erroneously circumscribed—for far too long—the legal effect of our duly enacted laws criminalizing both the killing of fetal life and its funding. That no longer being the case, the "authority to regulate abortion" has been "returned to the people and their elected representatives,"[23] where it rightfully belongs, and the people's exercise of that authority—as contained in the Texas law books—must now be given full effect.

John P. Devine
Justice

**OPINION FILED:** February 24, 2023

---

declaration of the statute's unconstitutionality to defeat prosecution under the statute).

[22] *See Pool v. City of Houston*, 978 F.3d 307, 309 (5th Cir. 2020) ("It is often said that courts 'strike down' laws when ruling them unconstitutional. That's not quite right. Courts hold laws unenforceable; they do not erase them." (citing Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 VA. L. REV. 933, 936 (2018))).

[23] *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2279 (2022).